Martsay BOLDER, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 36667.

Missouri Court of Appeals,
Western District.

March 11, 1986.

Application to Transfer Denied
June 17, 1986.

C.J. Larkin, Columbia, for appellant.

William L. Webster, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and TURNAGE and MANFORD, JJ.

TURNAGE, Judge.

Martsay Bolder filed a motion pursuant to Rule 27.26 to vacate the sentence of death imposed upon him for the murder of a fellow inmate in the state penitentiary. The trial court denied relief.[1] Bolder contends the court erred in failing to find that he had been denied effective assistance of counsel, in refusing to sustain a constitutional challenge to the death penalty, in failing to find that his jury was conviction prone because of the exclusion of persons who were opposed to the death penalty, and in refusing to allow funds to hire experts. Affirmed.

Bolder was found guilty of killing Theron King while both were confined in the penitentiary. The conviction was affirmed in *State v. Bolder,* 635 S.W.2d 673 (Mo.

banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Bolder's claim of ineffectiveness of counsel must be viewed against the facts stated in *Bolder.*

On March 14, 1979, two vocational teachers in the penitentiary observed two inmates fighting. The teachers identified Bolder as the person who was standing over King making striking or stabbing motions toward King's stomach. As the teachers approached, Bolder fled but was found a short time later in a building. Bolder had blood on his clothes and just before he was apprehended Bolder was seen wiping blood off his hands. The blood on Bolder's clothes matched the blood type of King. A search of the area where the attack occurred revealed a plastic folder containing inmate papers and Bolder's personal correspondence. The bag was stained with blood of King's type. A knife was found in the building that Bolder entered as he fled.

From the facts stated in *Bolder,* Bolder and King were the only persons involved in the fight and no one else was around except another inmate who approached to within two or three feet but then backed off.

Bolder first contends that there was an irreconcilable conflict between he and the Assistant Public Defender, Julian Ossman, who represented Bolder. The contention is that Bolder was dissatisfied with Ossman because Bolder arrived in Moberly for the trial and found that Ossman had not subpoenaed four inmates as witnesses. As described in *Bolder,* 635 S.W.2d at 687[24, 25], during the pretrial hearing Bolder became upset with the trial court's refusal to remove Ossman and grant a continuance and overturned a library table. The contention is also made that Bolder wrote letters to various officials complaining that Ossman had not been to see him in prison. There was evidence that the last letter of complaint written by Bolder was in September of 1979, and the trial began on May 5, 1980.

---

1. The 27.26 motion was filed in Randolph County where Bolder was tried and sentenced but was transferred to Boone County on Bolder's application for a change of Judge. The motion was tried in Boone County with the explicit agreement of Bolder.

Ossman testified at the 27.26 hearing and stated he had visited Bolder at the penitentiary five times between February 1980 and the trial date, and at least once prior to February.

Bolder now contends that because there was an irreconcilable conflict between he and Ossman, the trial judge should have examined the parties to determine the nature of the disagreement and its effect on the defense. Although the argument is not developed to its conclusion, the implicit import is that the trial court should have removed Ossman and appointed other counsel for Bolder. In *State v. Gilmore*, 697 S.W.2d 172, 174[1, 2] (Mo. banc 1985), the court stated "[t]o warrant substitution of counsel, the defendant must show 'justifiable dissatisfaction' with his appointed counsel." The court in that case held that the refusal to present a proposed alibi defense does not constitute "justifiable dissatisfaction" because the determination of which witnesses shall be called is a matter of trial strategy which is best left to counsel.

Here Bolder focuses primarily on the failure of Ossman to subpoena four inmate witnesses. Bolder contends the failure to have his witnesses in Moberly at the beginning of the trial caused him to be extremely upset and effectively fractured the attorney-client relationship with Ossman.

■ Ossman testified that he had interviewed the inmates who Bolder said would be witnesses in his behalf and found that they could not help Bolder because they would only testify they did not see Bolder stab King. Ossman further stated that he did not believe such testimony would be helpful because all the inmates had convictions for violent crimes. As stated in *Gilmore*, Bolder is required to show justifiable dissatisfaction with Ossman before the trial court was authorized to take any action to remove Ossman. The only dissatisfaction shown is the failure of Ossman to have the four inmates in Moberly at the beginning of the trial. The decision of whether or not to call the inmates as witnesses was a part of the trial strategy of Ossman and

is not a ground on which to find justifiable dissatisfaction. Bolder argues that Ossman failed to interview and call crucial witnesses. The four inmates could not be termed crucial because they could only testify that they did not see Bolder stab King. After talking with them Ossman decided he should not use them. As subsequently appears, Ossman testified Bolder agreed they should not be called after the inmates arrived in Moberly.

■ Bolder states he did not have a relationship with Ossman. There is no constitutional requirement that an accused have a meaningful relationship with a lawyer. *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983). Although Bolder does not use the term "meaningful relationship" the thrust of his argument reveals that to be his contention.

■ This allegation has been considered even though it was not raised in the Rule 27.26 motion and presented to the trial court. In that posture it is not properly before this court. *Barber v. State*, 639 S.W.2d 180, 181[2, 3] (Mo.App.1982). No ground is shown which required the court to remove Ossman as Bolder's attorney.

■ Bolder next contends Ossman failed to subpoena four crucial witnesses to testify. Bolder contends Ossman did not investigate and zealously pursue information presented by Bolder and failed to subpoena the inmates as witnesses. As pointed out above *Gilmore* holds that the decision of what witnesses to call is a matter of trial strategy left to the decision of counsel. In addition, the evidence does not support Bolder's contention. Ossman testified that he interviewed the inmate witnesses in the penitentiary and decided they could not help Bolder. When Bolder became upset that these inmates were not in Moberly for the trial, the court issued a subpoena for the four inmates and they were brought to Moberly immediately and were present in sufficient time to testify. Ossman testified that he and Bolder talked with each of these inmates in Moberly and that Bolder agreed that the inmates should not be called as witnesses. According to Ossman one of the inmates was in administrative

segregation at the time of the stabbing and could not have possibly seen anything. Bolder apparently had thought this inmate would testify to King's violent nature but since self-defense was not utilized that evidence was immaterial. One of the other inmates did not see the stabbing but overheard some guards say that King died of an infection of his stab wounds. This could not help Bolder because it was sheer hearsay. The other two inmates would have simply testified that they did not see Bolder stab King. Ossman stated that he did not feel it was worthwhile to put these two inmates with bad criminal records on the stand to state that they did not see anything. From the findings of fact the trial court believed the testimony of Ossman. The finding that Ossman was not ineffective is amply supported by the evidence and by the rule in *Gilmore.*

Bolder next contends Ossman was ineffective because he failed to put on any evidence during the penalty phase of the trial. Bolder contends that he was of borderline intelligence and 21 years old at the time of the murder. Bolder states these were two mitigating factors which should have been presented.

 Bolder was examined at the Fulton State Hospital in October of 1979 and was found to be free of any mental disease or defect. He was further found to be competent to stand trial and it was further found that he was mentally competent at the time of the murder. The examination revealed that Bolder was functioning in a borderline range of intelligence. Bolder does not explain how his borderline intelligence would constitute a mitigating factor. With reference to his age, Bolder was present during trial and the jury could certainly observe him and his age. However, even if it could be said that Ossman was ineffective for failure to put on evidence of Bolder's age it cannot be said that prejudice resulted as required by *Strickland v.*

*Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In view of the fact that Bolder was in prison serving a life sentence for murder at the time King was killed the jury found the aggravating factor to be that Bolder was in the lawful custody of a place of confinement. The jury in its verdict further stated that Bolder had "a prior criminal conviction for murder in the first degree and appears the life sentence was no deterrent to further crime." The lack of mitigating evidence is attributable to the lack of suitable mitigating evidence rather than a neglect of counsel to present it. *Briley v. Bass,* 750 F.2d 1238, 1247–48[8] (4th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).[2]

Bolder also attacks the final argument given by Ossman. This court has reviewed the argument and finds nothing to indicate that Ossman was not exerting a maximum effort to dissuade the jury from imposing the death sentence.

The trial court found that Ossman's performance conformed to the care and skill of a reasonably competent attorney rendering similar service. That finding is supported by the evidence and is not clearly erroneous.

Bolder next contends that the court in Bolder's murder trial committed error in striking members of the venire who were opposed to the death penalty. This contention is based upon *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir.1985), *cert. granted sub nom. Lockhart v. McCree,* — U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985). Bolder contends excluding jurors who are opposed to the death penalty makes the jury more conviction prone. This argument has been rejected several times, the most recent in *Gilmore,* 697 S.W.2d at 175[8].

 Bolder also contends that the trial court in the murder trial erred when it refused to find the death penalty as cruel

---

**2.** This case is distinguishable from *State v. Harvey,* 692 S.W.2d 290 (Mo. banc 1985), in which counsel announced he was not going to participate in the trial. Here Ossman appears to have done the best he could with what he had to work with. He testified that Bolder could not tell him where he was during the stabbing and could not explain the blood on his jacket. He stated he did not call any of Bolder's family because Bolder told him he did not want them involved.

and unusual punishment and that it deprived him of due process of law and equal protection of the laws. Bolder supports these contentions by stating that death is an excessive punishment in his case in light of his character, mental condition and life history. The death penalty was affirmed in *Bolder* and a 27.26 proceeding may not be used as a second appeal. *Sweazea v. State,* 515 S.W.2d 499, 501[1] (Mo. banc 1974).

Bolder further contends that the death penalty is unjustified as a means of achieving any legitimate governmental end and is therefore excessive. Again the death penalty was affirmed in *Bolder* and is not open to a second review in this action.

■ Bolder also contends that the death penalty procedures are discriminatorily applied because defendants who are of ethnic minority extraction and between the ages of 18 and 40, as well as impoverished male defendants, receive the death penalty much more frequently than others who have committed capital murder. In *Spinkellink v. Wainwright,* 578 F.2d 582, 613–14 (5th Cir. 1978), the court held that "if a state follows a properly drawn statute in imposing the death penalty, then the arbitrariness and capriciousness—and therefore the racial discrimination—condemned in *Furman* [*Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ], have been conclusively removed." In *State v. Newlon,* 627 S.W.2d 606, 611–12[3] (Mo. banc 1982), the court stated that the Georgia death sentence statutes have been upheld in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The court stated that the Missouri statute in essential part tracks the Georgia statute leaving little doubt that the Missouri statute is sound under the Federal Constitution. The court specifically held that the Missouri statute is constitutional. The very purpose of the statute in requiring the jury to find an aggravated circumstance before it can impose the death sentence is to ensure that the defendant and the crime in every case is individually considered and that the jury does not have unfettered discretion to impose the death penalty. The Missouri death penalty statute has been held to be constitutional and follows in essential provision the Georgia statute. In that circumstance the discriminatory imposition of the death sentence has been conclusively removed.

■ Bolder filed a supplemental brief alleging error on the part of the court in the Rule 27.26 hearing for failure to order funds to be made available to the public defender to secure expert witnesses to testify that removing persons opposed to the death penalty from a jury makes the jury conviction prone. This is an attempt to prove what the court in *Grigsby* held. Because the Supreme Court of Missouri has refused to follow *Grigsby,* there would be no point in allocating money for witnesses to prove the *Grigsby* conclusion. This is not to say that the court had authority to allocate funds to allow the hiring of experts because that question is not reached in view of the rejection of the *Grigsby* holding in this state.

The judgment is affirmed.

All concur.