814 F.Supp. 1412 (1993)
Thomas Henry BATTLE, Petitioner,
v.
William ARMONTROUT, Respondent.
No. 88-2043 C (5).
United States District Court, E.D. Missouri, E.D.
March 1, 1993.
*1413 *1414 *1415 *1416 Richard A. Ahrens, Lewis and Rice, St. Louis, MO, for petitioner.
David Hansen, Millie E. Aulbur, Asst. Atty. Gen., Jefferson City, MO, for respondent.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court to consider Thomas Battle's petition for Habeas Corpus. A jury in the Circuit Court of the City of St. Louis convicted petitioner of capital murder and sentenced him to death. The Missouri Supreme Court affirmed the judgment and conviction on direct appeal. State v. Battle, 661 S.W.2d 487 (Mo. banc 1983). Thereafter, the sentencing court denied petitioner's Rule 27.26 motion after an evidentiary hearing. That denial was affirmed in Battle v. State, 745 S.W.2d 730 (Mo.App.1987). On October 17, 1988, petitioner presented this writ of habeas corpus. The Supreme Court of Missouri issued a warrant of execution setting an execution date of 12:01 a.m. on Tuesday, October 25, 1988. The execution date was stayed on October 18, 1988 until further order of this Court. On March 14, 1989, this Court denied petitioner's petition for writ of habeas corpus.
On June 5, 1990, the Eighth Circuit vacated the judgment of this Court and remanded for appointment of counsel and reconsideration of Battle's petition. Accordingly, this Court appointed petitioner counsel and permitted petitioner's appointed counsel to file an amended petition. Petitioner simultaneously filed an amended petition in this Court and returned to the state court to present by Rule 91 habeas corpus certain claims that were not exhausted. On October 25, 1991, the Missouri Supreme Court ruled that the new claims for relief were procedurally barred.
Petitioner has alleged six grounds for error in his trial which support his amended petition for habeas corpus.[1] The circumstances of the crime for which Mr. Battle was found guilty are discussed in gruesome detail in the Missouri Supreme Court decision, State v. Battle, supra, and will not be reiterated in this memorandum. The grounds that Mr. Battle has alleged basically fall into five categories:
1. Ineffective assistance of counsel;
2. Jury selection error;
3. Error in the instructions;
4. Improper confessions; and
5. The propriety of the death sentence as it applies to this petitioner.

I. INEFFECTIVE ASSISTANCE OF COUNSEL DURING GUILT PHASE

A. Ineffective Assistance of Counsel Mark Fredman for Failure to Investigate Charles Hall

Petitioner contends that his counsel at trial was ineffective in failing to call Charles Hall as a witness who, the police report indicates, made statements suggesting that Elroy Preston was involved in the murder. Petitioner's counsel argued at trial that Mr. Preston had coerced petitioner to aid in the burglary of the victim, but that petitioner had left when the victim awoke during the burglary. The State argued, however, that it was petitioner who killed the victim, and that Mr. Preston was not involved. Petitioner maintains that Mr. Hall was an available and disinterested witness who could have supported petitioner's defense.
At the outset, it is important to note that the appellate court reviewing petitioner's Rule 27.26 motion declined to address this ground because petitioner had failed to raise the issue in his 27.26 motion, or his evidentiary hearing. Battle v. State, 745 S.W.2d 730, 734 (Mo.App.1988). Claims that are not raised in a Rule 27.26 motion, or presented or tried by the implicit consent of the parties in the evidentiary hearing, cannot *1417 be reviewed for the first time on appeal. Mallett v. State, 716 S.W.2d 902, 905 (Mo. App.1986). Because petitioner has failed to exhaust his state remedies on this issue, this Court also need not review this ground for habeas relief.
It is well settled that before a petitioner may present claims in a federal habeas corpus action, the petitioner must have presented the same legal theories and factual bases to the state courts. Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). Claims not presented in state court, or defaulted therein, are procedurally barred absent a showing of cause and prejudice. Sawyer v. Whitley, ___ U.S. ___, ___, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992); Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir.1989) stay denied, 495 U.S. 926, 110 S.Ct. 2162, 109 L.Ed.2d 492 (1990). In Sawyer v. Whitley, ___ U.S. ___, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), the Supreme Court considered the standard for determining whether a petitioner bringing a successive, abusive or defaulted federal habeas claim has shown he is "actually" innocent of the death penalty to which he has been sentenced so that the Court may reach the merits of the claim. The Court held "that to show `actual innocence' one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." 112 S.Ct. at 2517.
Under this standard, the Court must first look to the applicable state law. Under Missouri law, "[a]ny person who unlawfully, willfully, knowingly, deliberately and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder." Mo.Rev.Stat. § 565.001. Persons convicted of capital murder may be sentenced to death upon the recommendation of the jury following certain statutorily prescribed procedures. Mo.Rev.Stat. § 565.008; § 565.006; § 565.012. The jury may, and did, consider as an aggravating circumstance that "[t]he offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind." Mo. Rev.Stat. § 565.012.2(7). Without reiterating all of the gruesome details of the crime, the jury found that petitioner raped, brutally beat and ultimately stabbed to death an 80-year-old woman in her apartment. The fatal wound was effected by stabbing Miss Johnson through her eye socket with a butcher knife. Miss Johnson was still alive with the knife protruding from her face when petitioner and his cohort exited the apartment through the kitchen window. Miss Johnson died a few hours later. Petitioner had lived in the same neighborhood, and prior to Miss Johnson's death, petitioner had performed odd jobs for the elderly woman, who called him "Sweetboy." State v. Battle, 661 S.W.2d at 488-89.
The evidence allegedly kept from the jury due to alleged ineffective assistance of counsel fails to show that the petitioner is actually innocent of the death penalty to which he has been sentenced. This evidence brought forward to challenge the credibility of prosecution witnesses "will seldom, if ever make a clear and convincing showing that no reasonable juror would have believed the heart of the [prosecution witness's] account of petitioner's actions" as the Supreme Court noted in Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2524.
Therefore, the Court holds that petitioner has failed to show by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty under Missouri law.
Even if the Court were to address this issue, however, the Court would find that it does not allege a basis for habeas corpus relief. Petitioner claims ineffective assistance of counsel because his attorney failed to conduct an independent pretrial investigation of Mr. Hall, whose testimony could have aided in petitioner's defense.
The Sixth Amendment guarantees the right to effective assistance of counsel. Convicted defendants frequently allege ineffective assistance of counsel to attack the validity of their convictions. Irrespective of its popularity, however, the movant must *1418 overcome a heavy burden in order to succeed on such a ground. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987). Not only must the movant prove his allegations by a preponderance of the evidence, but the heaviest burden arises from a presumption that counsel is competent. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Moreover, judicial scrutiny of counsel's performance must be highly deferential. Guinan v. State, 726 S.W.2d 754, 757 (Mo.App.1986).
In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Sanders, 738 S.W.2d at 857. A defendant must satisfy both the performance and the prejudice prong in order to prevail on an ineffective assistance of counsel claim. In reviewing such a claim, the Court need not consider both prongs. If a defendant fails to satisfy one prong, the other prong becomes irrelevant. Sanders, 738 S.W.2d at 857.
Missouri courts have consistently held that the selection of witnesses, like the production of evidence, is a question of trial strategy. Furthermore, the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel. Bolder v. State, 712 S.W.2d 692, 694 (Mo.App.1986); Holzer v. State, 680 S.W.2d 764, 767 (Mo. App.1984); Franklin v. State, 655 S.W.2d 561, 565 (Mo.App.1983); Decker v. State, 623 S.W.2d 563, 565 (Mo.App.1981). If counsel provides a reasonable basis for his strategy, such basis cannot render the assistance incompetent or ineffective. Guinan v. State, 726 S.W.2d 754, 758 (Mo.App.1986).
Petitioner has failed to prove by a preponderance of the evidence that Mr. Fredman's legal representation fell below an objective standard of reasonable assistance.
Petitioner has failed to meet the requisite burden to prove ineffective assistance of counsel for failure to interview and produce testimony of Charles Hall. Consequently, the Court will deny petitioner's motion on this ground. The decision not to call Mr. Hall as a witness, or to investigate him as a potential witness, was a decision left to the discretion of the trial attorney and cannot now be a basis for ineffective assistance of counsel.

B. Ineffective Assistance of Counsel for Failure to Investigate Julius Henderson

Petitioner contends that his counsel at trial was ineffective in failing to investigate Julius Henderson as a witness, who also would have suggested that Elroy Preston was on the street near the crime. Apparently, this information, as to Henderson's knowledge, would have come through Charles Hall. As previously stated, petitioner's counsel argued at trial that Mr. Preston had coerced petitioner to aid in the burglary of the victim, but that petitioner had left when the victim awoke during the burglary. The State argued, however, that it was petitioner who killed the victim and that Mr. Preston was not involved.
Petitioner also failed to raise this claim in his Rule 27.26 motion to the state court. To avoid the cause and prejudice test, petitioner must "show by clear and convincing evidence that but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under applicable state law. Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2525. Again, the evidence allegedly kept from the jury due to alleged ineffective assistance of counsel fails to show that the petitioner is actually innocent of the death penalty to which he has been sentenced. This evidence brought forward to challenge the credibility of prosecution witnesses "will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of the [prosecution witness's] account of petitioner's actions" as the Supreme Court noted in Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2524.
*1419 Therefore, the Court holds that petitioner has failed to show by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty under Missouri law.
Further, even if the claim were to be addressed, the Court would find it does not allege a basis for habeas relief. Once again, the two-prong test applies to determine whether counsel was ineffective. In considering the performance prong, courts have consistently held that if an attorney has no notice, or scant notice, that a witness exists, he is not ineffective if he fails to investigate that witness, or fails to call that witness to testify. Franklin v. State, 655 S.W.2d 561, 566 (Mo.App.1983); Robinson v. State, 643 S.W.2d 8, 10 (Mo.App.1982). Furthermore, it is the movant's burden to establish that the witness could be located through reasonable investigation, that he would have testified if he had been called as a witness, and that his testimony would have provided a viable defense. Ladd v. State, 621 S.W.2d 543, 545 (Mo.App.1981).
Petitioner alleges merely that had counsel investigated Charles Hall he would have located Henderson who would have suggested Preston was near the scene of the crime. Petitioner has put forth no evidence to show that counsel had any notice of the existence of Julius Henderson. Thus, counsel cannot be ineffective for failure to investigate him. Franklin v. State, 655 S.W.2d at 566; Robinson v. State, 643 S.W.2d at 10. The only connection to William Henderson is through Charles Hall. The Court already determined that counsel's decision not to call Mr. Hall as a witness, or investigate him as a potential witness, was a decision left to the discretion of the trial attorney. See supra § IA. Moreover, it was petitioner's burden to allege and prove that Mr. Fredman could have located Mr. Henderson through reasonable investigation, or that he would have testified if called, and that his testimony would have provided a viable defense. Ladd v. State, 621 S.W.2d at 545. Petitioner failed to meet this burden. Having failed to prove the performance prong, the Court need not address the prejudice prong. The Court will deny petitioner's motion on this ground.

C. Ineffective Assistance of Counsel for Failing to Investigate Preston's Girlfriend, Pearl

Petitioner next argues that his attorney was ineffective because he failed to locate and present a defense witness Pearl Thompson. Ms. Thompson, at the time of petitioner's trial, was Elroy Preston's girlfriend. (Motion Tr., p. 5). When petitioner was a resident on death row, he read in a magazine that Ms. Thompson had some information that could have helped petitioner's defense. (Motion Tr., p. 5-6). Although petitioner knew of her existence prior to his trial, he was not aware that she had useful information until after he was convicted. (Motion Tr., p. 5-6). Petitioner, therefore, did not provide Mr. Fredman with Pearl Thompson's name. (Motion Tr., p. 35-36). Petitioner contends, however, that even though he did not provide his attorney with the name, Mr. Fredman should have learned of the name through the police report, and reasonable investigation. (Motion Tr., p. 37). Mr. Fredman had no recollection of the name Pearl Thompson. (Motion Tr., p. 75). A review of the police report shows that it does contain two references to the name "Pearl." One of the references does not state the last name, and the other reference is to a "Pearl Jeffrey."
Again, the two-prong test applies to determine whether counsel was ineffective. As previously stated, in considering the performance prong, courts have consistently held that if an attorney has no notice, or scant notice, that a witness exists, he is not ineffective if he fails to investigate that witness, or fails to call that witness to testify. Franklin v. State, 655 S.W.2d 561, 566 (Mo.App.1983); Robinson v. State, 643 S.W.2d 8, 10 (Mo.App. 1982). Furthermore, it is the movant's burden to establish that the witness could be located through reasonable investigation, that he would have testified if he had been called as a witness, and that his testimony would have provided a viable defense. Ladd v. State, 621 S.W.2d 543, 545 (Mo.App.1981).
*1420 Petitioner acknowledged that he failed to inform his trial counsel of the potential witness. The police report gave scant notice of the existence of the witness. Therefore, Mr. Fredman's failure to investigate Ms. Thompson, or call her as a witness, does not rise to a constitutional violation. Mullen v. State, 678 S.W.2d 1, 1 (Mo.App.1984). Moreover, it was petitioner's burden to allege and prove that Mr. Fredman could have located Ms. Thompson through reasonable investigation, that she would have testified if called, and that her testimony would have provided a viable defense. Ladd v. State, 621 S.W.2d at 545. Petitioner has failed to meet this burden. Having failed to prove the performance prong, the Court need not address the prejudice prong. The Court will deny petitioner's motion on this ground.

D. Ineffective Assistance of Counsel for Failing to Produce Testimony of Elroy Preston and Co-defendant Tracy Rowan

1. Elroy Preston
Petitioner contends that he was denied effective assistance of counsel because counsel failed to call as a witness Mr. Elroy Preston. Petitioner first raised this issue in his Rule 27.26 motion. Mr. Mark Fredman represented petitioner at trial (Motion Tr., p. 4). Petitioner maintained at his 27.26 hearing that he requested Mr. Fredman to attempt to have Mr. Preston testify at petitioner's trial. (Motion Tr., p. 6). Petitioner's defense at his trial was that he had left the scene of the crime before the crime took place, and that either Mr. Preston or Mr. Rowan actually killed the victim. (Motion Tr., p. 8).
Mr. Fredman was also present to testify at the evidentiary hearing. He stated that it was a matter of trial strategy not to call Mr. Preston to the stand. Mr. Preston, at the time of petitioner's trial, was awaiting trial on two other capital murder charges. (Motion Tr., p. 38). Attorney Christelle Adler represented Mr. Preston, and informed Mr. Fredman that she would not allow her client to take the stand and admit to the crime, if, in fact, he committed it. (Motion Tr., p. 76). Furthermore, Mr. Fredman believe that even if Ms. Adler did allow him to call Mr. Preston to the stand, Mr. Preston would either plead the Fifth Amendment, or deny having committed the crime, both of which would hurt petitioner's defense. (Motion Tr., p. 76-77). Mr. Fredman discussed this with petitioner, and his impression was that the two came to a joint decision not to call Mr. Preston to the stand, but instead to implicate Mr. Preston without actually calling him as a witness. (Motion Tr., p. 76-77).
The two-prong test also applies to determine whether counsel was ineffective in the selection of witnesses. Missouri courts have consistently held that the selection of witnesses, like the production of evidence, is a question of trial strategy. Again, the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel. Bolder v. State, 712 S.W.2d 692, 694 (Mo. App.1986); Holzer v. State, 680 S.W.2d 764, 767 (Mo.App.1984); Franklin v. State, 655 S.W.2d 561, 565 (Mo.App.1983); Decker v. State, 623 S.W.2d 563, 565 (Mo.App.1981). If counsel provides a reasonable basis for his strategy, such basis cannot render the assistance incompetent or ineffective. Guinan v. State, 726 S.W.2d 754, 758 (Mo.App.1986).
Petitioner has failed to prove by a preponderance of the evidence that Mr. Fredman's legal representation fell below an objective standard of reasonable assistance. Whether to call Mr. Preston, and determining whether Mr. Preston would be a helpful witness, was a matter for Mr. Fredman's professional judgment in determining his trial strategy. Counsel provided a reasonable basis for his strategy in the evidentiary hearing of petitioner's Rule 27.26 motion. Such basis cannot render his legal representation ineffective. Guinan, 726 S.W.2d at 758. When Mr. Fredman decided not to call Mr. Preston as a witness in petitioner's trial, Mr. Fredman did not fail to exercise the customary skill and diligence that a reasonably competent attorney would have performed under similar circumstances. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987). Accordingly, petitioner has failed to satisfy the performance prong of the test. Thus, the Court need not consider the prejudice prong. Strickland, *1421 466 U.S. at 687, 104 S.Ct. at 2064; Sanders, 738 S.W.2d at 857.
Petitioner has failed to meet the requisite burden to prove ineffective assistance of counsel for failure to interview and produce testimony of Elroy Preston. Consequently, the Court will deny petitioner's motion on this ground.

2. Tracy Rowan
Petitioner maintains that Mr. Fredman violated his constitutional right to effective assistance of counsel when he failed to call co-defendant Tracy Rowan as a witness. (Motion Tr., p. 6). At the evidentiary hearing, Mr. Fredman stated that he had interviewed Mr. Rowan prior to petitioner's trial, and concluded from the interview that Mr. Rowan would not make a very good witness. (Motion Tr., p. 78). Moreover, Mr. Rowan's attorney probably would not let him incriminate himself at his co-defendant's trial. Both circumstances would defeat petitioner's defense that Mr. Rowan and Mr. Preston were the true perpetrators of the crime. (Motion Tr., p. 78).
This situation is identical to that in Sanders v. State, 738 S.W.2d 856 (Mo. banc 1987), where counsel determined after interviewing a co-defendant that the co-defendant would not have offered testimony to exonerate the criminal defendant. Sanders, 738 S.W.2d at 859. Furthermore, counsel in that case determined that even if the co-defendant had helpful testimony, the co-defendant's attorney would not have permitted the co-defendant to testify. Sanders, 738 S.W.2d at 859. Based on these reasons, the Supreme Court of Missouri concluded that the decision by counsel not to call the co-defendant was not clearly beyond the bounds of prevailing professional norms. Sanders, 738 S.W.2d at 860. See also Lowery v. State, 650 S.W.2d 692 (Mo.App.1983).
Mr. Fredman's decision regarding Tracy Rowan was a matter of trial strategy. It is obvious here as in most cases involving multiple defendants that each defendant will seek to protect himself. He will either refuse to testify or will implicate other defendants rather than himself. At the evidentiary hearing, Mr. Fredman provided a reasonable basis for his strategy. Guinan, 726 S.W.2d at 758. When Mr. Fredman decided not to call Mr. Rowan as a witness, he acted within the bounds of prevailing professional norms. Sanders, 738 S.W.2d at 860. Accordingly, petitioner has failed to satisfy the performance component of the two-prong ineffective assistance of counsel test. The prejudice component is therefore immaterial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Sanders, 738 S.W.2d at 857. This ground does not support petitioner's action for habeas relief.

E. Ineffective Assistance of Counsel for Failure to Investigate and Produce Testimony of Gregory Bigley

Petitioner contends that he was denied effective assistance of counsel because counsel failed to interview and offer the testimony of Gregory Bigley who would have testified to Preston's character in the community and other relevant matters.
Again, petitioner failed to raise this claim in his 27.26 motion, and he has failed to show by clear and convincing evidence that but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under applicable state law. Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2525. See supra § IB.
Nonetheless, even if the Court were to address this claim, this Court would find it does not allege a basis for habeas relief. Again, when an attorney has notice, or scant notice, that a witness exists, he is not ineffective if he fails to investigate that witness, or fails to call that witness to testify. Franklin v. State, 655 S.W.2d at 566; Robinson v. State, 643 S.W.2d 8, 10 (Mo.App.1982). Further, petitioner failed to establish that the witness could be located through reasonable investigation, that he would have testified if called as a witness, and that his testimony would have provided a viable defense. Ladd v. State, 621 S.W.2d at 545. Having failed to prove the performance prong, the Court need not address the prejudice prong. The Court will deny petitioner's motion on this ground.

F. Ineffective Assistance of Counsel Related to Serology Issues

In his amended petition, petitioner raises four claims related to serology issues: *1422 1) failure to introduce or develop testimony on serology; 2) failure to prepare adequately for cross of state's expert on serology; 3) failure to introduce contrary serology evidence, and 4) failure to secure serology test of Mr. Preston. In his Rule 27.26 motion, petitioner alleged that trial counsel was ineffective for failing to "obtain the services of an expert in serology to make it possible for counsel to properly cross-examine state's witness Joseph Crow." (27.26 Motion Legal File, p. 22). On appeal of that motion, petitioner challenged counsel's failure to obtain a saliva sample from Elroy Preston (27.26 Motion Brief on Appeal, p. 22).
The Supreme Court has noted that "28 U.S.C. requires a federal habeas petitioner to provide the state courts with a `fair opportunity' to apply controlling legal principles to the facts bearing upon his constitution claim." Anderson v. Harless, 459 U.S. at 6, 103 S.Ct. at 277 citing Picard v. Connor, 404 U.S. 270, 276-77, 92 S.Ct. 509, 512-13, 30 L.Ed.2d 438 (1971). "It is not enough that all the facts necessary to support the federal claim were before the state courts ... or that a somewhat similar state-law claim was made." Id. (citations omitted). The habeas petitioner must have fairly presented to the state court the "substance" of his federal habeas corpus claim. Anderson v. Harless, 459 U.S. at 6, 103 S.Ct. at 277; Picard v. Connor, 404 U.S. at 275, 277-78, 92 S.Ct. at 512, 513.
With the exception of the claim challenging counsel's failure to obtain a saliva sample from Elroy Preston, the remainder of petitioner's claim relating to serology issues are barred for failure to present them in state court. Id.; Byrd v. Armontrout, 880 F.2d 1, 7 (8th Cir.1989). Petitioner has failed to overcome this procedural bar by presenting clear and convincing evidence that but for constitutional error, no reasonable juror would have found him eligible for the death penalty under Missouri law. Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2518.
Counsel's failure to seek a serology test of Mr. Preston is an issue petitioner raised in his Rule 27.26 motion, and which was examined at the evidentiary hearing. (Motion Tr., p. 97-98). At the hearing, Mr. Fredman stated that his reason for failing to seek a serology test was because "the unknown [he thought] was better than the known." (Motion Tr., p. 97). If the result of the serology test showed that Mr. Preston was scientifically unable to be a suspect, it would have eliminated Mr. Fredman's ability to argue that Mr. Preston committed the crime, thereby destroying petitioner's defense. (Motion Tr., p. 98).
For the reasons stated in Section IA, the Court will deny petitioner's motion on this ground. Petitioner has not proven by a preponderance of the evidence that Mr. Fredman's legal representation fell below an objective standard of reasonable assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Determining whether a saliva test would aid in petitioner's defense was a matter of trial strategy. Mr. Fredman provided a reasonable basis for his strategy. Such basis cannot render his legal representation ineffective. Guinan, 726 S.W.2d at 758. When Mr. Fredman decided not to obtain a saliva test of Mr. Preston, he did not fail to exercise the customary skill and diligence that a reasonably competent attorney would have performed under similar circumstances. Sanders, 738 S.W.2d 856, 857 (Mo. banc 1987). Accordingly, petitioner has failed to satisfy the performance prong of the two-prong ineffective assistance of counsel test. The prejudice prong, therefore, is immaterial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Sanders, 738 S.W.2d at 857.

II. IMPROPER AGGRAVATING CIRCUMSTANCES INSTRUCTION
Petitioner asserts that the aggravating circumstance found by the jury, that the murder of the victim "was outrageously, or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind" (§ 565.012.2(7), R.S.Mo.1978 Supp.) is unconstitutionally vague. Petitioner raised this issue on appeal to the Missouri Supreme Court. That court held that "[s]imilar assignments have been expressly considered and rejected by this Court." State v. Battle, 661 S.W.2d at 492.
*1423 In order for a state to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids an arbitrary and capricious infliction of the death penalty. Godfrey v. Georgia, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). The state must channel the sentencer's discretion by providing clear and objective standards which give specific and detailed guidance. There has to be some way to distinguish a case in which the death penalty was imposed from those cases in which it was not imposed. Godfrey, 446 U.S. at 433, 100 S.Ct. at 1767.
Missouri courts have addressed the issue that petitioner raises in this ground and have held that the particular aggravating circumstance in question sufficiently provides a principled means to distinguish cases in which the death penalty is imposed from those in which it is not, which is in conformity with Godfrey. State v. Griffin, 756 S.W.2d 475, 490 (Mo. banc 1988) cert. denied, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). State v. Preston, 673 S.W.2d 1, 10-11 (Mo. banc 1984) See also Mercer v. Armontrout, 864 F.2d 1429 (8th Cir.1988), motion for stay of execution denied, 488 U.S. 998, 109 S.Ct. 773, 102 L.Ed.2d 766 (1989).
For these reasons, the Court will deny petitioner's motion for habeas corpus relief on this ground.

III. IMPROPER MITIGATING CIRCUMSTANCE INSTRUCTION

A. Trial Court Erred by Refusing to Submit Movant's Requested Instruction on the Defense of Diminished Capacity As a Result of Voluntary Intoxication.

Movant contends in his petition that the trial evidence shows that on the day of the offense petitioner drank a case of beer, some Canadian Mist and smoked nine marijuana cigarettes. Moreover, he was drinking and smoking marijuana two hours before Mr. Preston coerced him to help burglarize the victim's house. This evidence, petitioner contends, supported an instruction on diminished capacity, which the trial court refused to give.
Petitioner initially raised this ground in his Rule 27.26 motion. The court noted at the outset that claims of instructional error are generally not cognizable in Rule 27.26 proceedings. The court, however, addressed the issue and ruled that the evidence did not support an instruction on the defense of diminished capacity as a result of voluntary intoxication. Battle v. State, 745 S.W.2d 730, 734 (Mo.App.1987).
The defense of diminished capacity as a result of voluntary intoxication is found in § 562.076 R.S.Mo. It became effective on January 1, 1979, providing that voluntary intoxication is admissible to negate the specific intent of a crime. Although the statute was amended October 1, 1984, making a voluntarily intoxicated person criminally responsible for his conduct, the diminished capacity defense was in effect when the jury found petitioner committed this crime. Ingram v. State, 686 S.W.2d 36, 37 (Mo.App.1985).
The defense of diminished capacity is available to negate the existence of purpose or knowledge when such mental states are elements of the offense charged. State v. Cole, 662 S.W.2d 297, 301 (Mo.App. 1983). Evidence establishing that defendant had been drinking, or even showing that defendant was intoxicated, however, does not require an instruction on voluntary intoxication. Such an instruction is proper only when evidence indicates the intoxication was so extreme that the defendant did not know what he was doing. State v. Edmaiston, 679 S.W.2d 360 (Mo.App.1984); State v. Sherrill, 657 S.W.2d 731 (Mo.App.1983). Submission of the issue of intoxication requires evidence of "severe impairment amounting to a loss of awareness of what one is doing, a suspension of all reason, a paralysis of the will, a mental incapacity to form a sane design, a stupefaction of the reasoning faculty." Joyce v. State, 684 S.W.2d 553, 555 (Mo.App.1984).
The evidence of the criminal defendant's conduct before, after and during the commission of the crime is relevant in determining intoxication, and whether the instruction should be submitted to the jury. State v. Cole, 662 S.W.2d 297, 301 (Mo.App.1983). Missouri courts have consistently recognized *1424 that when the defendant can recall with relative specific detail the events of the evening, whether it be in a confession, or at trial, this negates a level of intoxication necessary to support the giving of the intoxication defense instruction. State v. Helm, 624 S.W.2d 513, 517 (Mo.App.1981) (defendant's statement recounted in some detail the events which occurred, and demonstrated an awareness incompatible with a state of intoxication overbearing conscious will; under such facts, the defendant was not entitled to the instruction on voluntary intoxication); State v. Bienkowski, 624 S.W.2d 107, 108 (Mo.App.1981) (defendant's recall of the events belied his intoxication theory; therefore, refusal to give intoxication defense instruction not in error); State v. Madison, 684 S.W.2d 532, 534 (Mo. App.1984) (no error in refusing to give intoxication defense instruction because defendant indicated by his confessions that he was aware of his action on the night in question, and he recounted every detail of his actions); Joyce v. State, 684 S.W.2d 553, 555 (Mo.App. 1984) (no error in refusing to submit intoxication defense instruction because defendant comprehensively answered all questions addressed to him, he gave a statement describing in detail the manner in which he perpetrated the crime, his recall belied his contention that he was severely impaired, and his ability to detail the circumstances within a matter of hours of the event eliminated any possibility of successfully interjecting impairment of his culpable mental state).
The evidence during the trial supporting petitioner's claim of intoxication is located in two places; petitioner's taped confessions, which were played to the jury during the direct examination of State's witness Detective Sergeant Herbert Riley (Audio Cassette, Trial Tr., p. 531, 560; Video cassette, Trial Tr., p. 566, 580), and during petitioner's own testimony at trial (Trial Tr., p. 848, 920). In petitioner's audio cassette statement, he said that he and Tracy Rowan were in his basement drinking a couple of beers when they decided to go next door and burglarize the victim's house. (Trial Tr., p. 534). In that same statement, he said that after his own involvement in the burglary ended, petitioner returned to his basement and "decided to stretch out and go to sleep because [he] was highdrunk." (Trial Tr., p. 538). In the video cassette, petitioner again makes reference to the fact that he and Tracy Rowan were in petitioner's basement "drinking a couple of beers and getting high." (Trial Tr., p. 570).
In petitioner's trial testimony he said that on the evening of the crime, he and Tracy Rowan were in petitioner's basement listening to the radio and drinking beer. (Trial Tr., p. 853). They then left to go to a party. On the way to the party, they stopped at Elroy Preston's house, and spent thirty-five to forty minutes talking with Preston, drinking beer and drinking Canadian Mist. (Trial Tr., p. 854). After leaving Preston's, they went to the party where they did not have anything to drink. They were at the party for roughly two hours. (Trial Tr., p. 854). After returning from the party, they went back to petitioner's basement and had a few more beers. (Trial Tr., p. 855). Petitioner estimated that over the course of the day he drank twenty-four beers (Trial Tr., p. 856, 884). Plus, he had some Canadian Mist. (Trial Tr., p. 854, 884). Furthermore, he smoked eight or nine marijuana joints. (Trial Tr., p. 885).
The Court finds that the evidence did not support an instruction on the defense of diminished capacity as a result of voluntary intoxication. Simply because there was evidence establishing that petitioner may have been intoxicated, does not necessarily require an instruction on voluntary intoxication. The trial court could only have properly given the instruction if the evidence had established the extreme level of intoxication required. State v. Edmaiston, 679 S.W.2d at 362; State v. Sherrill, 657 S.W.2d at 735. It is clear that petitioner was able to recall with relative specific detail the events of the evening of the murder, both in his recorded confessions and in his testimony at trial. This ability to recall and recount negates the level of intoxication necessary to support the giving of the intoxication defense instruction. State v. Helm, 624 S.W.2d at 517; State v. Bienkowski, 624 S.W.2d at 108; State v. Madison, 684 S.W.2d at 534; Joyce v. State, 684 S.W.2d at 555. Accordingly, the Court will deny petitioner's habeas motion on this ground.

*1425 B. The Trial Court Erred in Refusing to Instruct the Jury on Mitigating Factors.

Petitioner contends that the trial court erred in refusing his tendered instruction in the penalty phase which listed all seven mitigating factors found in § 565.012.3, R.S.Mo. In movant's petition, he contends that the trial court refused to give two of the mitigating circumstances: (1) whether petitioner was under the influence of an extreme mental or emotional disorder when he committed the murder; and (2) whether the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. Petitioner appealed a third mitigating factor to the Missouri Supreme Court which he does not mention in his petition: (3) whether the victim was a participant in the defendant's conduct or consented to the act.
The trial court ruled that the three mitigating circumstances were not supported by the evidence in the case. (Trial Tr., p. 1022-23). Thus, petitioner's attorney tendered an amended instruction which deleted these three mitigating circumstances. The court gave the amended instruction. The Missouri Supreme Court on review of the transcript found that there was no evidence to support the three mitigating circumstances omitted from the instruction. State v. Battle, 661 S.W.2d 487, 492 (Mo. banc 1983).
This Court upon careful review of the entire trial transcript, agrees that there was no evidence in the trial that would support submitting the three mitigating factors to the jury. Accordingly, the Court will deny petitioner's writ of habeas corpus on this ground.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL DURING SENTENCING PHASE.
Petitioner claims that he was denied effective assistance of counsel at the sentencing phase.
At the penalty phase, the state introduced no additional witnesses. (Trial Tr. 1033). Petitioner's counsel presented six witnesses: petitioner's father, Henry Battle; his mother, Arnetha Battle; his grandmother, Eliza McCoy; his brother, Mark Battle; his greataunt, Willie Jones; and the chaplain of the city jail, the Rev. Paul Bires. (Trial Tr. 1035-1048). Each relative made a short plea for mercy. Petitioner asserts that his counsel should have procured expert psychologists, social workers or similar witnesses to give opinions on petitioner's poor academic background and some evidence of abuse.
As an initial matter petitioner failed to raise an issue concerning his poor academic background or abuse either during his Rule 27.26 litigation in Missouri state court or on appeal from the denial of Rule 27.26 relief. This claim was not fairly presented to the state courts, nor can it now be. See Laws v. Armontrout, 834 F.2d 1401, 1411-15 (8th Cir. 1987). Petitioner has failed to show by clear and convincing evidence that but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under applicable state law. Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2525.
Petitioner's claim for habeas corpus relief based on ineffective assistance of counsel at the sentencing phase will be denied.

V. USE OF IMPROPERLY OBTAINED CONFESSIONS.

A. Conviction Obtained by Involuntary Confession.

Petitioner contends that the State obtained defendant's conviction by using an involuntary confession. Defendant was only eighteen years old. He had only an eighth grade education. He contends he was taken into custody before he was a suspect and questioned for hours. He requested counsel, but was denied that request. His original statements denied guilt but the interrogators refused to accept his statement. Eventually, petitioner gave an inculpatory statement out of fear and coercion. The state's evidence against petitioner at trial consisted of this statement.
Petitioner maintains that the admissions and incriminating statements he made on a cassette recording and video tape should have been suppressed by the trial court because *1426 they resulted from violations by the police of the constitutional guarantees found in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
The trial court conducted an evidentiary hearing on petitioner's motion to suppress. Petitioner's evidence at the motion to suppress included testimony by petitioner's mother, Arnetha Battle (Trial Tr., p. 220-23), petitioner's father, Henry Battle (Trial Tr., p. 224-29), and petitioner himself (Trial Tr., p. 229-76). Petitioner's evidence at the suppression hearing was as follows:
On July 15, 1980, ten days after the murder of the victim, a police officer visited the Battle home. (Trial Tr., p. 221). He asked for Thomas Battle who was not home at the time. He asked Mrs. Battle to have Thomas call him when he got home. (Trial Tr., p. 222-23). Thomas attempted to call the officer that day when he returned, but was unable to reach him (Trial Tr., p. 223). The next day the police officer returned to the Battle home around 9:30 in the morning, again asking for Thomas. (Trial Tr., p. 233). Thomas left with the police officer. (Trial Tr., p. 227). The officer took Thomas down to the homicide office at police headquarters. (Trial Tr., p. 232). Once there, the officer directed petitioner to an interrogation room. (Trial Tr., p. 232). Four officers were in the room with petitioner. (Trial Tr., p. 233). The questioning began at 10:15 or 10:30. (Trial Tr., p. 234), and continued for roughly an hour and fifteen minutes before petitioner made his first statement. (Trial Tr., p. 236). Prior to making the statement, Thomas asked if he could see a lawyer, but the officers continued to ask questions. (Trial Tr., p. 245). Petitioner also asked if he could call his father, but that request was refused, too. (Trial Tr., p. 245). After making his initial statement, the questioning then continued for another half hour before he made his first audio taped statement. (Trial Tr., p. 237). Before petitioner made any taped statements, he was given a form stating his constitutional rights. After each right, Thomas initialed it. The last phrase stated "I have read and understand these rights. I voluntarily waive these rights and desire to make a statement." Thomas put his initials after this phrase, too. Petitioner then signed the entire document. (Trial Tr., p. 270). Petitioner was also read his constitutional rights before he made the audio cassette statement. (Trial Tr., p. 238). After the first side of the tape was completed, the officers did not believe that Thomas was telling the truth. The officers flipped the tape over. During the time it took the officers to flip the tape over, the officers continued questioning petitioner. (Trial Tr., p. 251). Petitioner then made a statement on the second side of the tape which incriminated himself. (Trial Tr., p. 253). Approximately thirty minutes after the second statement was made, petitioner then made a third statement on the video tape, which was also incriminating. (Trial Tr., p. 253). After the statements were made, the officers informed petitioner that they were detaining him. (Trial Tr. p. 263).
The State then called several witnesses: Sergeant Herbert Riley (Trial Tr., p. 277-304); Ronald Scaggs (Trial Tr., p. 304-26); and, Michael Siemers (Trial Tr., p. 327-50). The State added the following evidence during the motion to suppress hearing: During the course of the investigation of the victim, the police received information that a person named Elroy Preston might have been involved in the murder. Preston was picked up on July 15, 1980, and told officers that he, Thomas Battle and Mr. Rowan had been out drinking that night at the time of the murder. To check Preston's alibi, the officers attempted to locate Mr. Battle the same day. (Trial Tr., 278-80). Thomas was not home when they first went out to his house. (Trial Tr., p. 306). The next morning one of the officers picked him up. At about 10:30 a.m., Sergeant Riley and Detective Scaggs, as well as two other officers began interviewing petitioner in the homicide division. The officers testified that at this time petitioner was not a suspect in the murder and was not under arrest. (Trial Tr., p. 308, 329). As the officers began talking with petitioner about Mr. Preston's story, petitioner became visibly nervous. After the interview had been continuing for about fifteen minutes, petitioner leaned back in his chair. Officer Riley was able to see the tread on the bottom of petitioner's *1427 shoes and noticed that the distinctive tread resembled the shoe print found at the scene of the murder, a picture of which the officer had before him. (Trial Tr., p. 280-81). The officer then halted the interview and advised petitioner of his Miranda rights. (Trial Tr., p. 281-82, 308, 320). Petitioner waived those rights and signed a written consent to be fingerprinted and voluntarily surrendered his tennis shoes. (Trial Tr., p. 282-83, 309). Approximately an hour after the fingerprinting process had been completed, petitioner, learning of the positive results of the tests, initially denied any involvement in the crime. Shortly thereafter, petitioner changed his story and agreed to make a tape-recorded statement. He was given a written Miranda warning to sign, which he read, initialed each warning, and signed. (Trial Tr., p. 284-85, 307, 332). At the beginning of the taped statement, he was again advised of his constitutional rights and again waived those rights. (Trial Tr., p. 284). He then admitted he and Mr. Rowan had broken into Miss Johnson's apartment, but stated the murder was committed by Mr. Rowan without his knowledge. (Trial Tr., p. 296). The sergeant told petitioner that he did not believe his statement. (Trial Tr., p. 298, 319, 344). Petitioner then agreed to tell the truth. He confessed on side two of the cassette that he had murdered the victim. After the cassette tape statement had been completed, the officers asked petitioner if he would give his statement on video tape. He consented. (Trial Tr., p. 286). Defendant was again read his constitutional rights prior to the video statement, and again he waived those rights. (Trial Tr., p. 286). He repeated his admission that he murdered the victim. Petitioner was held in custody. Apparently, he made another statement while in his jail cell. (Trial Tr., p. 310-12, 333-38).
The trial court suppressed any statements made by Mr. Battle prior to the audio cassette statement. It ruled the audio cassette, as well as the video tape, admissible. Finally, the trial court suppressed the statements made by Mr. Battle after the video statement. (Trial Tr., p. 371). Petitioner now contends that the trial court erred in failing to suppress both the statements on the audio tape and the video tape.
The Missouri Supreme Court on appeal found that the rulings of the trial court to admit the statements were supported by substantial evidence. State v. Battle, 661 S.W.2d 487, 491 (Mo.Banc 1983). This Court has conducted an independent review and reaches the same conclusion.
It is well-settled that a prosecutor may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless the prosecutor demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). A custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. The following measures are required: prior to any questioning the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. The defendant may waive effectuation of these rights provided that the waiver is made voluntarily, knowingly and intelligently. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. Whether a waiver of counsel is a knowing and intelligent relinquishment or abandonment of a known right or privilege depends in each case upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). Moreover, even though a defendant may have begun answering questions, if he indicates at any time during the interrogation process that he wishes to consult with an attorney before speaking further, there can be no more questioning. Miranda, 384 U.S. at 445, 86 S.Ct. at 1612. It is the State's burden to demonstrate that the defendant's incriminating statement was voluntarily made, and that the defendant knowingly and intelligently waived his privilege. Miranda, 384 U.S. at 475, 86 S.Ct. at 1628; *1428 State v. Flowers, 592 S.W.2d 167 (Mo. banc 1979).
The testimony of the officers, the execution of the waiver warning form, the transcripts of both tapes, and defendant's trial testimony clearly show that he was given multiple Miranda warnings and repeatedly waived them. Petitioner himself stated that he read, initialed and signed the written waiver form before he made his audio tape statement. Furthermore, both the audio tape and the video tape contain a reading of petitioner's rights to him before he ever made a statement on those tapes. Additionally, he was even asked if he understood those rights, to which he responded "yes" before he began his statements. From an examination of the transcript of the suppression hearing, it is clear that petitioner was not threatened, nor made any promises which might have motivated his statements. Furthermore, he had completed the eighth grade, could read and write, and appeared to be making a knowing and intelligent waiver of his rights. The State carried its burden in proving by a preponderance of the evidence that the incriminating statements made by petitioner were voluntary. State v. Flowers, 592 S.W.2d 167 (Mo. banc 1979).

VI. JURY SELECTION ERROR
Petitioner contends that he was convicted and sentenced by an unconstitutionally selected petit-jury when the trial court struck for cause venireperson James Fannon because of his reservations about the death penalty. Such an action by the trial court was in direct violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
In Witherspoon, the Supreme Court held that a sentence of death cannot be carried out if the jury that imposed or recommended the death sentence was chosen by excluding panel members simply because they expressed general objections to, or scruples against, imposing the death penalty. To so exclude such persons violates a defendant's right to be tried by a cross-section of the community. Witherspoon, 391 U.S. at 522, 88 S.Ct. at 1777. Even if a court strikes just one person as a result of his religious or moral convictions, it still violates the defendant's constitutional rights. Davis v. Georgia, 429 U.S. 122, 122-123, 97 S.Ct. 399, 399, 50 L.Ed.2d 339 (1976).
A court, however, may discharge prospective jurors when they make it unmistakably clear that they would automatically vote against the imposition of the death penalty without regard to any evidence that might develop at trial. Davis, 429 U.S. at 123, 97 S.Ct. at 399; State v. Blair, 638 S.W.2d 739 (Mo. banc 1982), cert. denied, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). Furthermore, an "I don't think so," is not equivocal in its context, but is considered by the courts to be common vernacular expressing a negative. State v. Mercer, 618 S.W.2d 1, 7 (Mo. banc), cert denied, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981).
This Court has carefully reviewed and considered the entire voir dire of Mr. Fannon. When the State asked the panel whether they could consider the death penalty if during the trial of the case the facts and circumstances were such that the judge would instruct the jury on the death penalty, Mr. Fannon shook his head "no." (Trial Transcript, p. 24). His reason for feeling he could never impose the death penalty was "more religious than anything. You know, the Bible says man does not judge man." (Trial Tr., p. 25). When the State asked him if his position was that he could never impose the death penalty in any case, regardless of the circumstances, he responded "[t]hat's right." (Trial Tr., p. 25.)
After the State concluded its voir dire, petitioner's attorney directed his attention to Mr. Fannon. Mr. Fannon stated that perhaps the only way in which he would ever consider imposing the death penalty was if he were an eye witness to the murder. (Trial Tr. p. 27-28).
Upon the conclusion of Mr. Fredman's voir dire, the trial judge then asked Mr. Fannon several questions:
Court: Are you saying that there's no possible set of facts that could occur by which you could consider the death penalty?

*1429 Venireman Fannon: I don't think so. I don't know.
Court: All right. Are you saying that you  I want to make sure I understand what you're saying. Are you saying that in no case would you ever consider the death penalty, would you be able to consider it? Are you saying that or are you not saying that?
Venireman Fannon: Yeah. I don't think I would. I mean 
Court: There's no case, there's no case in which you would ever consider imposing the death penalty, is that what you're saying?
Venireman Fannon: Yeah.
(Trial Tr. p. 30-31).
The last question asked of Mr. Fannon was directed by the judge. He asked the venireperson whether he would "automatically vote against it, the death penalty, no matter what the evidence was?" Mr. Fannon responded that he "[p]robably would." (Trial Tr. p. 35).
Based on the answers Mr. Fannon gave to the Court, the judge struck him for cause, stating "[a]s I see it, he can't serve in this case and I'll sustain the State's motion to strike said juror for cause because what I got out of his testimony is that he couldn't impose the death penalty, no matter what the facts were...." (Trial Tr., p. 38).
The trial court was correct when it discharged venireperson Fannon, because Mr. Fannon made it clear that he could not impose the death penalty in almost any situation. Davis, 429 U.S. at 123, 97 S.Ct. at 399; State v. Stokes, 638 S.W.2d 715, 722 (No. banc 1982), cert. denied, 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983). Moreover, simply because Mr. Fannon responded to several questions with an "I don't think so," does not necessarily mean that Mr. Fannon was unsure of his response. It was merely common vernacular used to express the negative. Mercer, 618 S.W.2d at 7. Mr. Fannon clearly was positive in his responses that he would not impose the death penalty in any situation. Accordingly, this ground is insufficient to support petitioner's habeas relief.
EVIDENTIARY HEARING
[D]ismissal of the habeas petition without a hearing is proper where petitioner's allegations are frivolous ... where the allegations, even if true, fail to state a cognizable constitutional claim, where, the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record.
Wallace v. Lockhart, 701 F.2d 719, 729 (8th Cir.1983) (citations omitted).
The petition before the Court contains virtually the same claims petitioner presented in his pro se petition several years ago. There is no need for additional fact development of the claims presented in the same form as the previous petition or for the new claims which the Court has determined are procedurally barred.
Therefore, petitioner's motion for discovery, funds and for an evidentiary hearing will be denied.

CERTIFICATION OF PROBABLE CAUSE
Under the provisions of 28 U.S.C. § 2251, petitioner must be granted a certificate of probable cause in order to proceed with the appeal of the merits of this Court's determination. On the record before it, the Court must deny the issuance of such certificate for the following reasons.
In Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), the Supreme Court meticulously elaborated the standard for determining whether to issue a certificate of probable cause, setting forth the following standard:
It is generally agreed that "probable cause requires something more than the absence of frivolity and that standard is a higher one than the `good faith' requirement of [28 U.S.C.] 1915." We agree with the weight of opinion in the Court of Appeals that a certificate of probable cause requires petitioner to make a "substantial showing of the denial of [a] federal right." In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable *1430 cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate. (Citations omitted).
Barefoot, 463 U.S. at 893, 103 S.Ct. at 3394. The meaning of the "substantial showing" standard is:
In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among the jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."
Barefoot, 463 U.S. at 893, n. 4, 103 S.Ct. at 3395, n. 4. Within the standards so clearly set out in Barefoot, this court cannot find that a certificate of probable cause is warranted in this case. The law is so well-settled with regard to the grounds that petitioner raises in this motion, that the issues are not subject to debate.
Accordingly,
IT IS HEREBY ORDERED that petitioner's motion for discovery, funds and for an evidentiary hearing is DENIED.
IT IS FURTHER ORDERED that Thomas Henry Battle's petition for writ of habeas corpus is DENIED.
IT IS FURTHER ORDERED that certificate of probable cause shall not issue herein.
IT IS FINALLY ORDERED that execution of sentence is further stayed for an additional ten (10) days, to and including March 11, 1993, in order to provide petitioner an opportunity to appeal this Court's denial of a certificate of probable cause to the Court of Appeals. In the event such appeal is not sought, then the stay shall expire on March 11, 1993. If notice of appeal is filed on or before March 11, 1993, the stay of execution of the sentence shall be determined by further order of the United States Court of Appeals for the Eighth Circuit.
NOTES
[1] Most of the grounds petitioner raises in the amended petition are the same as those raised in the original petition. Petitioner presented the remainder in his Rule 91 petition to the Supreme Court of Missouri.