**Thomas Henry BATTLE,**
**Plaintiff–Appellant,**

v.

**Paul K. DELO, Defendant–Appellee.**

**No. 93–1852.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1993.

Decided March 28, 1994.

Suggestion for Rehearing En Banc
Denied May 27, 1994.*

---

\* Arnold, Chief Judge, and Wollman, J., would grant the suggestion. McMillian and Wollman, JJ., would hold the suggestion in abeyance until the United States Supreme Court issues its decision in *Schulp v. Delo*, 11 F.3d 738 (8th Cir. 1993).

Richard A. Ahrens, St. Louis, MO, argued, for appellant.

Millie E. Aulbur, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON and JOHN R. GIBSON **, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Thomas Henry Battle, convicted of capital murder and sentenced to death, appeals from the district court's [1] order denying his petition for habeas corpus. Battle brings various claims of ineffective assistance of counsel at the guilt and penalty phases of his state trial, instructional error, improper admission of a confession, and unconstitutional jury selection. We affirm the judgment of the district court.

Battle was convicted of capital murder and sentenced to death in the Circuit Court for the City of St. Louis, Missouri, in 1981. The Supreme Court of Missouri affirmed Battle's conviction and sentence. *State v. Battle*, 661 S.W.2d 487 (Mo. banc 1983), *cert. denied*, 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984). In 1984, Battle filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 27.26.[2] The court appointed counsel to represent him, held an evidentiary hearing, and denied his Rule 27.26 motion. The Missouri Court of Appeals affirmed the denial of Battle's Rule 27.26 motion. *Battle v. State*, 745 S.W.2d 730 (Mo.Ct. App.1987), *cert. denied*, 488 U.S. 871, 109

S.Ct. 183, 102 L.Ed.2d 152 (1988). Battle then filed a pro se petition for writ of habeas corpus in the United States District Court for the Western District of Missouri. The Western District transferred the case sua sponte to the Eastern District of Missouri, where the district court, without appointing counsel, denied Battle federal habeas relief. On Battle's appeal of the denial of his habeas petition, a panel of this court reversed and remanded the case to the district court with directions to appoint him counsel. *Battle v. Armontrout*, 902 F.2d 701 (8th Cir.1990). In 1990, the district court appointed counsel, and Battle filed an amended habeas petition. The district court denied Battle's motion for federal habeas relief and refused to issue a certificate of probable cause so he could press his appeal of that court's decision. A panel of this court granted a certificate of probable cause on April 8, 1993. Battle's execution has been stayed until the conclusion of these proceedings. Battle appeals from the district court's denial of his petition for federal habeas relief, 814 F.Supp. 1412.

Battle was convicted of raping Birdie Johnson, an eighty-year old woman, and then stabbing her to death with a butcher knife in her apartment in St. Louis. *Battle*, 661 S.W.2d at 488. Battle, eighteen at the time of the murder, lived with his parents in a nearby apartment. He often performed odd jobs for the elderly woman. At 2:30 or 3:00 a.m. on July 5, 1980, Battle and Tracy Rowan were drinking and smoking marijuana in Battle's bedroom. After Battle suggested they steal Birdie Johnson's television, Rowan and Battle walked to her apartment, ripped the screen on an open kitchen window, and climbed in through the window. There was substantial evidence from which the jury concluded Battle and his companion beat and raped Johnson and ransacked her apartment. When Rowan turned on a light, Battle apparently announced Johnson would have to die because she had seen them. He then "com-

** The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2. Rule 27.26 was repealed and replaced by Rule 29.15, effective January 1, 1988.

menced stabbing the elderly, naked, beaten and ravished woman." *Id.* at 489. Because the knife kept bending when he stabbed her in the abdomen, Battle finally plunged the blade into her face, just under her left eye. She remained alive, "saying short prayers," for several more hours after Battle and his companion left through the kitchen window. *Id.*

Battle raises six issues on appeal. First, he contends that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his trial counsel did not investigate certain witnesses purportedly involved in the crime or combat the State's serology evidence. Second, Battle argues that he was denied due process because the state trial court gave improper jury instructions. Third, he contends that the state trial court allowed into evidence a confession which he claims the State obtained improperly. Fourth, he argues that the state trial court wrongly excluded a venireperson for cause based on the venireperson's beliefs about the death penalty. Fifth, Battle contends the district court erred in denying his request for an evidentiary hearing to assess the evidence relating to his ineffective assistance of counsel claims. Finally, Battle argues that we should remand this case and assign it to a different district court judge for further proceedings.

### I.

Battle first contends he was denied effective assistance of counsel at trial in violation of the Sixth and Fourteenth Amendments. Battle presents four claims of ineffective assistance of counsel: (1) that trial counsel failed to locate Charles Hall and Julius Henderson as witnesses and therefore failed to present their testimony concerning Elroy Preston's role in the crime; (2) that counsel failed to locate and present the testimony of Pearl Thompson, Elroy Preston's girlfriend at the time of the crime, even though her first name was listed on police reports; (3) that his attorney did not call Tracy Rowan and Elroy Preston as witnesses; and (4) that counsel failed to combat serology evidence because he did not engage in a lengthy cross-examination of the State's expert and be-

cause he did not obtain blood and saliva samples from Preston.

■ We engage in an independent review of ineffective assistance claims as they present mixed questions of law and fact; however, we review the district court's findings of fact under the clearly erroneous standard. *Laws v. Armontrout,* 863 F.2d 1377, 1381 (8th Cir.1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989).

■ At the outset, we recognize that before a petitioner can bring a federal habeas action, he must have presented the same legal theories and factual bases to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *Kenley v. Armontrout,* 937 F.2d 1298, 1301 (8th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991). Claims not presented to the state court are procedurally barred unless appellant can show cause or actual prejudice; if he cannot meet this standard, he can present these claims to the federal courts if failure to hear them would result in a "miscarriage of justice" because he has evidence of his "actual innocence." *Sawyer v. Whitley,* — U.S. —, —, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992); *see Schlup v. Delo,* 11 F.3d 738, 739–40 (8th Cir.1993); *Kenley,* 937 F.2d at 1301. "Actual innocence" means he must show "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law." *Sawyer,* — U.S. at —, 112 S.Ct. at 2517. The actual innocence exception is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* — U.S. —, —, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993).

■ In *McCoy v. Lockhart,* 969 F.2d 649, 651 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 3056, 125 L.Ed.2d 739 (1993), we held that this standard applies not only to claimed actual innocence of the death penalty, but also to challenges to convictions, and in *Cornell v. Nix,* 976 F.2d 376, 381 (8th Cir.1992) (en banc), *cert. denied,* — U.S.

——, 113 S.Ct. 1820, 123 L.Ed.2d 450 (1993), this court en banc cited *McCoy* with approval. We decline Battle's invitation to revisit *McCoy.* As a panel we must follow the decisions of another panel as the law of the circuit. Moreover, *Cornell* expresses the position of the court en banc, which we are bound to follow. *Accord Schlup,* 11 F.3d at 740.

### A.

The district court found Battle's claims as to Hall and Henderson were procedurally barred.

With respect to Charles Hall, the district court held, and Battle concedes, the ineffective-assistance claims were procedurally barred because he failed to raise them at the state level. Therefore a federal court cannot review them on appeal unless Battle shows cause, prejudice or actual innocence. *See Herrera,* —— U.S. at ——, 113 S.Ct. at 862; *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2518; *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977). The district court found that even if the issues were not procedurally barred, the decision not to investigate Hall, who Battle claims would have said that Preston was on the scene, did not show that trial counsel's legal representation fell below a reasonable level of assistance.

The district court determined Battle's challenge to his counsel's decision not to interview Julius Henderson was procedurally barred because Battle failed to raise this claim in the state court. However, the court stated that if it were to consider the issue, his claim did not provide a basis for federal habeas relief because trial counsel had no notice of the existence of Henderson and therefore no duty to interview him. The district court concluded Battle failed to prove that the witness could be found through reasonable investigation, that he would testify if called, and that his testimony would have provided a viable defense.

■ We need not reach the merits of these claims because Battle's ineffective-assistance challenge to his counsel's failure to call Hall and Henderson is procedurally barred, and Battle has failed to overcome the "cause and prejudice" test or the "actual innocence" standard. We reject Battle's contention that the State's failure to produce a police report in response to his pro se motion for discovery before his Rule 27.26 hearing constituted cause external to the defense. The police report had been produced in response to Battle's pro se discovery request at trial, and trial counsel stated at the 27.26 hearing that although he did not show the report to Battle, they discussed it in detail a number of times. Battle was aware of the information in the police report, and if he failed to discuss this with counsel, it falls short of a showing that the claimed police report was not produced. The report in counsel's possession at trial can hardly be said to be external to the defense. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). This cannot be a basis for a claim that his default should be excused because the information was not available to his counsel. *See McCleskey v. Zant,* 499 U.S. 467, 498, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991) (refusing to allow the unavailability of a document at the time of defendant's first habeas petition to constitute cause for failure to raise the claim when defendant knew of subject matter).

■ We also reject Battle's alternative argument that the cause test was met by the ineffective assistance of counsel he received from counsel appointed to represent him at the Rule 27.26 proceeding. Ineffective assistance of counsel at the state post-conviction phase cannot be the basis of a finding of cause because no constitutional right to counsel attaches at that stage. *Nolan v. Armontrout,* 973 F.2d 615, 617 (8th Cir.1992). Battle asks that we reconsider *Nolan,* contending it is wrongly decided. However, we have already answered a similar argument regarding *McCoy,* and, as *Nolan* is the law of this circuit, we must follow it. *Accord Coleman v. Thompson,* 501 U.S. 722, ——, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (ineffective assistance at state habeas level does not constitute "cause"); *Blair v. Armontrout,* 976 F.2d 1130, 1139 (8th Cir.1992) (ineffective assistance in federal habeas cannot establish

"cause"), *cert. denied,* —— U.S. ——, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993).

▮ Because we conclude Battle did not show cause, we need not consider whether he was actually prejudiced. However, we believe he was not actually prejudiced by the failure to call Hall and Henderson because the decision did not infect the entire trial with error. *See United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). Battle asserts Hall and Henderson would have testified that Preston was at the murder scene. This does not exonerate Battle, but is merely eyewitness testimony which supplements other testimony in support of his theory that Preston committed the murder.

▮ Although Battle has failed to establish cause or actual prejudice, we must hear his claim if he fits within the "narrow scope of the fundamental miscarriage of justice exception." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2519. We believe Battle has failed to show by "clear and convincing evidence" that but for the claimed constitutional error, no reasonable juror would find him eligible for the death penalty under Missouri law. *Id.* at ——, 112 S.Ct. at 2523; *see Cornell,* 976 F.2d at 381; *McCoy,* 969 F.2d at 651. The evidence kept from the jury due to the alleged ineffective assistance of counsel only places additional suspects at the crime scene. Further, Battle's counsel in this appeal even conceded that Henderson wants no part of this matter and that he refuses to cooperate at this stage of the proceedings as to what he saw over thirteen years ago. Even if counsel investigated and called Hall and Henderson to testify, we cannot say that with the other ample physical and circumstantial evidence, a reasonable juror would not have found Battle guilty of the death penalty. *See Sawyer,* —— U.S. at —— ——, 112 S.Ct. at 2522–23; *Herrera,* —— U.S. at ——, 113 S.Ct. at 860–61 (petition for federal habeas relief does not provide a forum for the retrial of a convicted felon).

**B.**

We now turn to Battle's claims as to Pearl Thompson, Tracy Rowan, and Elroy Preston, which are not procedurally barred.

▮ Once petitioner shows he raised the claims at the state level, then the federal court may reach the merits. To succeed in an ineffective assistance claim, the appellant must show: first, his counsel's assistance fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances; and second, that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). With respect to prejudice, *Strickland* defined the burden generally as requiring a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. at 2064. Moving to a more specific plane, *Strickland* requires that "there [be] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068; *see Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986). In *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993), the Supreme Court developed the prejudice burden in greater detail by stating that "to set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id. Fretwell* applies the more general analysis, namely "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," acknowledging that under *Strickland* the analysis must focus not only on outcome determination, but also on whether the result of the proceeding was fundamentally unfair or unreliable.[3] *Fretwell,* —— U.S. at ——,

---

3. In *Fretwell,* the district court, affirmed by this court, granted the writ on a legal ground which had been overruled after petitioner's trial. The Supreme Court reversed. —— U.S. at ——, 113

S.Ct. at 845. Justice O'Connor, in her separate concurrence, made clear that in the vast majority of cases the determinative question will be whether the result of the proceedings would have

113 S.Ct. at 844; *see also Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Further, we must examine the attorney's conduct as of the time of trial and not view it with the distorting tint of hindsight. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Cox v. Lockhart,* 970 F.2d 448, 455 (8th Cir.1992). As counsel's function is to assist the defendant, counsel has a duty to "advocate the defendant's cause ... to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.[4]

 Battle argues his trial counsel's failure to call Pearl Thompson as a witness amounted to ineffective assistance. The district court rejected his assertion, finding that Battle did not even become aware that Thompson had information to help his defense until after his conviction when he read about her in a detective magazine while in prison. Battle never provided his counsel with her name as a potential witness before his trial for capital murder and no evidence exists that trial counsel had any notice of her identity. We reject Battle's argument that counsel should have learned through the police reports of her existence. The police reports contain only two references to a "Pearl," one listing no last name and one listing a "Pearl Jeffrey." A first name, or an incorrect last name, in a police report can hardly be the basis for an ineffective assistance claim when Battle himself did nothing to assist counsel in locating those who could have helped his defense. We conclude trial counsel was not deficient in his performance, and therefore we need not consider whether Battle was prejudiced.

 With respect to failing to call Elroy Preston and Tracy Rowan to testify, the district court held that Battle was not denied effective assistance of counsel. Battle contended at his trial that he left Birdie Johnson's apartment before she was murdered and that either Preston or Rowan actually killed her. Battle concedes his trial counsel did argue, albeit unsuccessfully, at the murder trial that Preston killed Birdie Johnson. His trial counsel testified at the Rule 27.26 hearing that he did not call either Preston or Rowan to testify at Battle's trial because he believed at the time that neither would be a good witness for Battle. The district court found Preston was awaiting trial on two other unrelated capital murder charges at the time of Battle's trial, and Preston's attorney informed Battle's counsel that she would advise Preston either to deny any part in the crime or to plead the Fifth Amendment right against self-incrimination—neither of which trial counsel believed would help Battle's defense.

 As to Rowan, who was Battle's co-defendant in the murder trial, Battle's trial counsel testified at the Rule 27.26 hearing that he decided not to call him to the stand since he expected Rowan to either deny any part in the crime or plead the Fifth Amendment. Trial counsel testified at the evidentiary hearing that his decision not to call either Preston or Rowan to testify was a matter of trial strategy. This is consistent

---

been different, and that this remains unchanged. *Id.*

4. Missouri courts have consistently held that the selection of witnesses is a question of trial strategy and that a reasonable trial strategy cannot be a basis for finding ineffective assistance of counsel. *Bolder v. State,* 712 S.W.2d 692, 694 (Mo.Ct. App.1986); *Guinan v. State,* 726 S.W.2d 754, 758 (Mo.Ct.App.1986), *cert. denied,* 484 U.S. 873, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987). However, in this circuit an attorney's performance may be held ineffective if he fails to investigate or investigates inadequately. *Chambers v. Armontrout,* 907 F.2d 825, 828–31 (8th Cir.) (en banc), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). "Counsel must exercise reasonable diligence to produce exculpatory evidence and

strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Kenley,* 937 F.2d at 1304 (citing *Elridge v. Atkins,* 665 F.2d 228, 235–37 (8th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982)). The appellant must overcome a heavy presumption that counsel was competent. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. In Missouri, if an attorney has little or no notice that a witness may exist after diligent preparation of the case, he is not ineffective if he fails to investigate the potential witness or fails to call that witness to testify. *Franklin v. State,* 655 S.W.2d 561, 566 (Mo.App.1983); *Robinson v. State,* 643 S.W.2d 8, 10 (Mo.Ct.App.1982).

with *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, in which the Supreme Court ruled strategic decisions "made after thorough investigation of law and facts ... are virtually unchallengeable," even if that decision later proves unwise. *See Novak v. Purkett,* 4 F.3d 625, 628 (8th Cir.1993) (failure to call witness to testify because he had a prior conviction and because of trial counsel's assessment of his witness' emotional state was not deficient performance); *Sanders v. State,* 738 S.W.2d 856, 860 (Mo. banc 1987) (decision not to call co-defendant to testify was reasonable and "not clearly beyond the bounds of prevailing professional norms"). Choosing not to call Preston and Rowan was a reasonable decision at the time and did not amount to ineffective assistance. The state trial court's ruling in the 27.26 hearing so found and this was affirmed. *See State v. Battle,* 661 S.W.2d at 495; *Battle v. State,* 745 S.W.2d at 735. These findings are not shown to be unsound.

 In addition, even if we concluded that Battle's counsel's decision not to call Preston and Rowan to testify was deficient, we would still reject Battle's ineffective-assistance claim because he failed to demonstrate prejudice resulting from the attorney's decision. Battle's argument is that had trial counsel provided effective assistance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Battle has not met this burden. The record is replete with evidence that Battle was involved in the crime. Besides Battle's confessions on both the audiotape and videotape, evidence was presented at trial that his handprint matched that found on the sink under the window at the victim's apartment and that his shoe had the same distinctive tread as a shoe print lifted from the murder scene. *See State v. Battle,* 661 S.W.2d at 490. This is powerful physical and circumstantial evidence that Battle committed the murder. We are further satisfied that Battle's arguments, although directed at outcome determination, are also inadequate on the record before us to demonstrate that the proceeding was fundamentally unfair or unreliable. *Fretwell,* —— U.S. at ——, 113 S.Ct. at 842–43.

## C.

Battle next contends that he was denied effective assistance of counsel because his attorney did not interview or call witnesses to attack the State's serology expert and failed to obtain a saliva sample from Preston. The district court held all of the claims as to the serology issues, except the claim regarding Preston's saliva sample, were procedurally barred because Battle failed to raise them to the state court. The district court also found Battle failed to overcome the cause or actual prejudice standard and therefore he was precluded from raising the issues in federal court.

 Battle has not shown cause, prejudice or actual innocence to overcome the procedural bar with respect to this claim. Instead, he argues that the district court erred in finding the claims procedurally barred and that we should grant an evidentiary hearing to develop the serology evidence. We believe the district court properly found these claims were procedurally barred and therefore need not address the evidentiary hearing argument. If we to consider the issues of cause and prejudice, we would conclude that trial counsel's failure to cross-examine the serologist more fully did not render the trial fundamentally unfair. As we stated above, ample evidence was found at the murder scene from which the jury could find Battle guilty of capital murder.

 Battle did raise his claim of ineffective assistance of counsel for failure to obtain a saliva sample from Preston at the state level. The state court held that it was a matter of trial strategy not to obtain the sample and thus not a ground for finding ineffective assistance of counsel. *State v. Battle,* 745 S.W.2d at 735. Based on the substantial evidence, we cannot say that the state trial court's findings are incorrect. *See Cox v. Lockhart,* 970 F.2d 448, 452 (8th Cir. 1992) (state court's findings of fact are presumed correct). Trial counsel testified at the Rule 27.26 evidentiary hearing he did not obtain the samples because he determined that if the tests showed an adverse result,

they would refute Battle's only theory of innocence. He testified if the tests showed a favorable result, they would not exonerate Battle but only make Preston a possible suspect in the murder. Counsel testified at the 27.26 hearing that he did not conduct a lengthy cross-examination of the State's serology expert because he did not want to confuse the jury or risk the jury placing too much emphasis on the expert's testimony. This testimony was the basis for the state court's finding that these were matters of trial strategy.

 Battle argues there is no trial-strategy excuse for his counsel's failure to take advantage of expert services available to him. He argues that unless the expert is called to testify, the report need not be produced and that the expert would have helped prepare counsel for cross-examination of the state's expert. However, trial counsel is not required to employ the services of experts, provided that counsel prepares an adequate defense for a client through careful investigation of facts surrounding the case.

As the basis that counsel met the reasonable performance standard, the state court found he adequately investigated the facts, considered viable theories, and developed evidence to support those theories. These factual findings are entitled to a presumption of correctness. *Foster v. Lockhart,* 9 F.3d 722, 726 (8th Cir.1993), is not to the contrary. There, counsel failed to obtain a sleep test and pursue an impotency theory, and thus develop evidence that would have completely exonerated the defendant. *Id.* at 726–27. In contrast, even if Battle's trial counsel developed the serology evidence further, it would not have proven that Battle was innocent, only that Preston was also a possible suspect. Battle's counsel made a strategic decision not to attempt to incriminate Preston because it could have had an adverse effect on Battle's proffered defense, particularly at the death penalty phase. Thus, we conclude trial counsel's legal representation did not fall below the objective standard of reasonable assistance.

After carefully considering Battle's ineffective assistance of counsel claims, we affirm the district court's denial of habeas relief.

## II.

Battle next asserts that the instructions given to the jury during the penalty phase of his trial violated his constitutional rights.[5]

5. The instructions provided that the jury must unanimously determine the aggravating circumstance of "torture or depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible or inhuman." The burden was on the State to prove this beyond a reasonable doubt. If the jury does not unanimously find the existence of such circumstance to warrant imposition of the death penalty, the jury must fix punishment for life without eligibility of parole until Battle has served a minimum of fifty years. The instructions further require the jury to find that this was an aggravating circumstance sufficient to warrant the imposition of death as punishment. Instruction No. 31.

The jury was then instructed:

If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death as submitted in Instruction No. 32, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. In deciding that question you may consider all of the evidence relating to the murder of Birdie Johnson.

You may also consider

1. Whether the defendant has no significant history of prior criminal history.

2. Whether the defendant was an accomplice in the murder of Birdie Johnson and whether his participation was relatively minor.

3. Whether the defendant acted under extreme duress or substantial domination of another person.

4. The age of the defendant at the time of the offense.

If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence. Instruction No. 33.

The court also instructed the jury:

Even if you decide that a sufficient mitigating circumstance or circumstances do not exist which outweigh the aggravating circumstance or circumstances found to exist, you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you. Instruction No. 34.

He argues they were improper because: (1) the mitigating circumstances jury instruction improperly limited the mitigating circumstances that the jury could consider; (2) the instructions required the jury to unanimously find a mitigating circumstance before balancing the mitigating and aggravating circumstances; and (3) the instruction regarding the aggravated circumstance, that the murder involved "torture or depravity of mind and as a result thereof it was outrageously or wantonly vile, horrible or inhuman," was unconstitutionally vague.

## A.

In his first allegation of instructional error, Battle argues that the jury instructions precluded the jury from considering evidence of Battle's character traits and personal background as mitigating circumstances in imposing his sentence. The State argues that the jury instructions did not prevent the jury from considering evidence that Battle suffered from a troubled youth, was easily led and intimidated, and had consumed a case of beer and a bottle of Canadian Mist and smoked eight or nine marijuana cigarettes the day of the murder. The State contends that the instructions allowed the jury to consider all of the evidence relating to the murder in determining mitigating circumstances.

The Constitution requires that the "sentencer ... not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (emphasis in original). The sentencer must be permitted to consider, as mitigating factors, the defendant's character, prior record, age, lack of specific intent to cause death, and extent of his role in the crime. *Id.* at 597, 98 S.Ct. at 2960; *Eddings v. Oklahoma*, 455 U.S. 104, 113–14, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). In assessing

the effect of a jury instruction on a conviction, "we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyde v. California*, 494 U.S. 370, 378, 110 S.Ct. 1190, 1196, 108 L.Ed.2d 316 (1990) (quoting *Boyd v. United States*, 271 U.S. 104, 107, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926)). We must first look at the specific language challenged, and then, if that language is unconstitutional, we must focus on the instructions as a whole to determine if they charge the jury with a correct interpretation of the law. *California v. Brown*, 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987).

*Lockett*, while holding that the Eighth Amendment requires consideration of the character and record of the offender and the circumstances of the offense, does not require that relief be granted to Battle. *See* 438 U.S. at 605, 98 S.Ct. at 2965. The instruction in issue clearly refers to the circumstances of the offense, and the question is whether the sentencing jury was precluded from considering, as a mitigating factor, Battle's character and record. *Lockett* dealt with the Ohio death penalty statute that limited the sentencer's consideration of mitigating circumstances to only three specified grounds. 438 U.S. at 608, 98 S.Ct. at 2966. Once the sentencer decided these three factors in the negative, the Ohio statute mandated the sentence of death. *Id.* The Supreme Court held that the limited range of mitigating circumstances was incompatible with the Eighth and Fourteenth Amendments, and that to meet constitutional requirements a death penalty statute "must not preclude consideration of relevant mitigating factors." *Id.*

In this case we deal with the instructions given the jury, rather than the statutory basis for the instructions. There is no preclusion in the instructions from considering mitigating circumstances.[6]

---

6. Although we recognize that the Missouri Supreme Court's Committee on Criminal Charges and Instructions has changed the statutory instructions since Battle's conviction to more spe-

cifically provide that the jury may consider other factors outside the events surrounding the crime in mitigation of punishment, we conclude the instructions given in Battle's case did not uncon-

Similarly in *Eddings,* the trial judge stated that in following the law, he could not consider the fact of the young offender's violent background, 455 U.S. at 112–13, 102 S.Ct. at 876, and his unhappy upbringing and emotional disturbance. *Id.* at 109, 102 S.Ct. at 873. The state appellate court affirmed. *Id.* The Supreme Court held that the sentencer and the court of appeals may determine the weight given to relevant mitigating evidence, but the courts may not ignore the mitigating evidence by excluding it from consideration. *Id.* at 114–15, 102 S.Ct. at 877.

In *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), the Supreme Court considered the Florida statute which required consideration of some seven mitigating factors, which are quite similar to those enumerated in the Missouri statute at issue here. In *Hitchcock,* the trial judge had instructed the jury to consider the factors in aggravation and mitigation "that you may consider under our law." *Id.* at 398, 107 S.Ct. at 1824. Then he instructed them to consider a listing of the statutory mitigating circumstances. *Id.* After receiving the advisory jury's recommendation, the sentencing judge stated that there were insufficient mitigating circumstances "as enumerated" in the Florida statute to outweigh the aggravating circumstances, and further that the court was mandated to apply the facts to the enumerated aggravating and mitigating circumstances. *Id.* The Supreme Court concluded that the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of the non-statutory mitigating circumstances and, accordingly, there was violation of the rule articulated in *Eddings* and *Lockett.* *Id.* at 398–99, 107 S.Ct. at 1824.

*Hitchcock, Eddings* and *Lockett* involved preclusion or limitation on jury consideration of the non-specified mitigating circumstances. In contrast, the record before us demonstrates no such limitation in the evidence the jury could consider.

Battle places great reliance on *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). There, the instructions given pursuant to Mississippi law limited the jury to considering only the enumerated aggravating circumstances, and thereafter, to considering the two elements of mitigation, age and lack of prior criminal record, in determining whether the death penalty should not be imposed. *Id.* at 1367. The Fifth Circuit concluded that a reasonable juror could have believed from these instructions that he could consider only the two mitigating factors specifically enumerated in the charge. *Id.* at 1369. The trial court's charge to the jury contained no explicit instruction that the jury was free to consider mitigating factors other than the two enumerated. *Id.* The court observed that the parallel syntax in the discussion of the enumerated aggravating and mitigating factors were such that a reasonable juror could infer that these were the sole factors permitted to be considered, and that the inference was further bolstered by additional language referring to the elements of mitigation. *Id.* at 1370. The court concluded that reasonable jurors might well have been led to believe that they could, as part of their sworn duties, consider only the two mitigating factors. *Id.* at 1370–71. The court concluded that the sentencing jury was precluded from considering, as mitigating factors, all but two aspects of the defendant's character and record and the circumstances of the offense. *Id.* at 1373.

*Washington* is distinguishable. First, in Battle's case, the issue of preclusion is not a factor. While it is true that the state trial court refused to give three of the seven enumerated statutory and mitigating circumstances, the Missouri Supreme Court held that these three circumstances were not supported by the evidence. 661 S.W.2d at 492. Second, in *Washington,* the jury instructions as a whole might have led jurors to preclude consideration of mitigating evidence. *See* 655 F.2d at 1370. In contrast, in Battle's case, the instructions read as a whole do not preclude jurors from considering mitigating circumstances. Indeed, the instructions

stitutionally preclude consideration of relevant mitigating factors. *See* MAI C.R.2d 15.44 (subsequently revised as MAI C.R.3d 313.44).

clearly state the ultimate decision of imposing the death penalty rests with the jury. Further, the instructions contain generalized language allowing consideration of evidence not specifically enumerated.

Jury Instruction No. 33 requires the jury to determine whether "a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance," and in deciding this question, the jury "may consider" all of the evidence relating to the murder of Birdie Johnson. The jury is then instructed that it may also consider four additional factors. These factors we know to be statutory mitigating factors, but the instruction does not refer to them in such terms. In addition, the jury was not told that the four factors occupied such status. In approaching the issue of mitigating circumstances, the instruction is permissive rather than preclusive or limiting in nature. The instruction thus does not violate *Lockett, Eddings* or *Hitchcock.*

When Jury Instruction No. 33 is read in combination with the other instructions, we believe the jurors could have considered Battle's character, record, and other evidence not specifically mentioned in the instruction as other mitigating circumstances. We are persuaded by the State's argument that the instruction allowing the jury to consider whether Battle's participation was relatively minor and whether he acted under extreme duress or substantial domination of another person allowed the jury to consider the specific aspects of Battle's character as they related to the circumstances of the offense. Similarly, a general instruction to consider the circumstances of the offense, as well as the specific reference to extreme duress, allowed the jury to consider Battle's ingestion of drugs and alcohol on the day of the murder. Battle argues that one specific issue that was not considered was his troubled youth and family life. While this area is not specifically mentioned or authorized in the instructions, the general reference in the several instructions to the mitigating circumstances does not preclude or limit the jury's consideration of this evidence, which was of a most general nature and which contains some conflicts.

The instructions given in this case have some similarity to the capital sentencing procedures the Supreme Court approved in *Gregg v. Georgia,* 428 U.S. 153, 207, 96 S.Ct. 2909, 2941, 49 L.Ed.2d 859 (1976). There, the statute enumerated ten specific aggravating circumstances, but it contained no enumeration of mitigating circumstances except a reference to mitigating or aggravating circumstances otherwise authorized by law. *Id.* at 164, 165 n. 9, 96 S.Ct. at 2921, n. 9. The procedure approved in *Gregg* is more restrictive than any language in the instruction before us. In *Smith v. Armontrout,* 888 F.2d 530, 544–45 (8th Cir.1989), the jury instruction given was quite similar to the instruction before us, although it specifically authorized the jury to consider any circumstances found from the evidence in extenuation or mitigation of punishment. *Id.* While this additional language does not appear in the instructions before us, the question is one of limitation or preclusion in the language, and we find none. Rather, we believe the instructions contained a permissive authorization to consider mitigating circumstances. Thus, there is no *Lockett* violation.

**B.**

 Battle next argues that the unanimity requirement of the mitigating circumstances jury instruction is unconstitutional because it imposed a barrier to the sentencer's consideration of relevant mitigating circumstances in violation of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McCoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). *Mills* governs jury consideration of mitigating factors in the sentencing phase of a death-penalty case, and invalidates a jury instruction that creates an impression on a reasonable juror that a mitigating circumstance may not be considered unless the jurors first unanimously find that the circumstance exists. 486 U.S. at 384, 108 S.Ct. at 1870.

 A claim alleging a violation of *Mills* and *McCoy* is procedurally barred from federal habeas review if not raised in the state courts unless the movant shows cause and actual prejudice. *Grubbs v. Delo,* 948 F.2d

1459, 1470–71 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 109, 121 L.Ed.2d 67 (1992); *Gilmore v. Delo,* 908 F.2d 385, 387 (8th Cir.), *cert. denied,* 497 U.S. 1049, 111 S.Ct. 20, 111 L.Ed.2d 828 (1990). If the claim is not barred, the federal court must consider "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence." *Boyde,* 494 U.S. at 380, 110 S.Ct. at 1198. A capital sentence proceeding does not violate the petitioner's constitutional rights if there is only a possibility that the jury was impermissively inhibited by the instruction; he must show a "reasonable likelihood" that the instruction prevented the jury from considering constitutionally relevant evidence. *Id.*

Battle argues that a reasonable juror could have concluded that no mitigating evidence could be considered in his favor unless all of the jurors found it to be a mitigating circumstance, and that the unanimity requirement prevented jurors from giving independent mitigating weight to Battle's character and record. The State urges us to reject the claims as procedurally barred. Battle raised the *Mills* claim for the first time in his brief to this court on appeal from the district court's denial of his pro se petition and refusal to appoint counsel. He then asserted the argument in the amended petition he filed pursuant to this court's opinion remanding to the district court with instructions to appoint counsel. He presented the claims to the state courts in his amended petitions for habeas relief pursuant to Missouri Supreme Court Rule 91, and the Missouri Supreme Court rejected his petitions. The district court did not address the claims in its order. The State argues even if the *Mills* claim is not procedurally barred, it is barred by *Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989), holding that a new rule cannot be applied retroactively if a petitioner's case was final before the new rule was decided. Finally, the State argues that even if not barred procedurally or by *Teague,* Battle's *Mills* claim should fail on the merits.

Jury Instruction No. 33 stated in relevant part: "If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances ..., then you must return a verdict fixing defendant's punishment at imprisonment for life ... without eligibility for probation or parole until he has served a minimum of fifty years of his sentence." Jury Instruction No. 34 stated: "Even if you decide that a sufficient mitigating circumstance or circumstances do not exist which outweigh the aggravating circumstance or circumstances found to exist, you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you." [7]

We conclude Battle's *Mills* argument is procedurally barred. He did not properly raise it below.[8] Further, Battle cannot overcome the procedural bar by filing a Rule 91 petition in the state courts. *See Byrd v. Delo,* 942 F.2d 1226, 1232 (8th Cir.1991) ("[R]ule 91 cannot be used as a vehicle for raising questions that could have been raised on direct appeal or in a Rule 27.26 proceeding, filed initially in a state trial court.").

---

7. The jury was also instructed as follows:

 In determining the punishment to be assessed against the defendant for the murder of Birdie Johnson, you must first unanimously determine whether the murder of Birdie Johnson involved torture or depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible or inhuman. Instruction No. 31.

 The jury was instructed that the State bears the burden of proving this circumstance beyond a reasonable doubt, and that it was an aggravating circumstance. The jury was further instructed that if it made this finding, it had the duty to decide whether sufficient aggravating circumstance or circumstances existed to warrant the imposition of death. *Id.*

8. Because we conclude Battle's *Mills* argument is procedurally barred, we need not address the State's assertion that the rule in *Teague* precludes the relief Battle seeks. We also do not need to consider Battle's argument that the State waived its *Teague* argument. *See Caspari v. Bohlen,* —— U.S. ——, ——, 114 S.Ct. 948, ——, 127 L.Ed.2d 236 (1994) (federal court may decline to apply *Teague* if the State fails to raise it); *Williams v. Dixon,* 961 F.2d 448, 456 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992) (discussing split among the circuits regarding the waiver issues).

Even if we were to conclude Battle's *Mills* argument is not procedurally barred, we would still find his assertion lacking on the merits. The Missouri Supreme Court has held the language in this instruction is sufficient under *Mills* and *McCoy*. *See State v. Petary*, 781 S.W.2d 534, 543 (Mo. banc), *vacated and remanded*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), *reaff'd*, 790 S.W.2d 243 (1990) (Mo. banc), *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990). Our circuit has held that the Missouri instructions, in essence the same instructions given in this case, do not require that the jury render a verdict of death as punishment if it finds the mitigating circumstances outweigh the aggravating circumstances. *Smith*, 888 F.2d at 545. Battle has failed to show that there is a reasonable likelihood that the jury misconstrued the instructions as to make the sentencing decision improper. The jury was not required to impose the death penalty, and the Missouri instructions did not lead the jury to the inescapable conclusion that it must unanimously agree that there were mitigating circumstances before it could fix life in prison as Battle's punishment. We conclude the instructions were not constitutionally infirm.

### C.

Battle's final argument regarding instructional error is that the sole aggravating circumstance submitted at the sentencing phase, whether the murder involved "torture or depravity of mind and that as a result thereof was outrageously or wantonly vile, horrible or inhuman," was unconstitutionally vague, in violation of the Eighth and Fourteenth Amendments. In returning its recommendation of death as the punishment in Battle's case, the jury specifically stated that it found beyond a reasonable doubt "the torture and depravity of mind that as a result thereof [the murder] was outrageously wanton, vile, horrible and inhuman." The district court rejected Battle's claim for habeas relief on this issue, and we affirm.

A state has a constitutional responsibility to tailor and apply its capital punishment law in a manner that avoids an arbitrary and capricious infliction of the death penalty. *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). The statute must provide clear and objective standards so that there is some way to distinguish a case in which the death penalty is appropriate from those cases in which it is not. *Id.* at 427, 100 S.Ct. at 1764. The state must articulate guidelines that channel and limit the sentencer's discretion in imposing the death penalty. *Maynard v. Cartwright*, 486 U.S. 356, 362–64, 108 S.Ct. 1853, 1857–59, 100 L.Ed.2d 372 (1988). Thus, a statutory aggravating circumstance requiring that the murder involve "depravity of mind" without further definition of the phrase violates the Eighth Amendment because it does not sufficiently limit the pool of persons convicted of murder who would be eligible for the death penalty. *Id.* Notwithstanding the foregoing, "some kind of torture or serious physical abuse is [a sufficient] limiting construction" to save an aggravating circumstance instruction. *Id.* Missouri courts have found a "depravity of mind" aggravating circumstance is not too vague to provide adequate guidance to the sentencer when clear and objective standards exist to define what type of murders constitute killings committed with "depravity of mind." *State v. Preston*, 673 S.W.2d 1, 11 (Mo. banc) (listing factors that constitute "depravity of mind"), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984).

Battle attempts to distinguish his case because even though the jury found torture and depravity of mind, the jury did not articulate the specific findings it considered "torture." In affirming Battle's conviction, the Missouri Supreme Court found "torture" because the victim had "substantial time to contemplate her fate." *Battle*, 661 S.W.2d at 494. Even if a jury does not make specific findings that the murder involved torture, a finding by the state court of evidence that the victim had a substantial period of time before death to anticipate and reflect on it is a proper limiting construction of the aggravating circumstance instruction. *Mathenia v. Delo*, 975 F.2d 444, 450 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1609, 123 L.Ed.2d 170 (1993).

For the foregoing reasons, we believe no instructional error of constitutional dimension existed in this case.

### III.

■ Battle next argues that the district court erred in denying habeas relief on his claim that the state trial court allowed into evidence a confession obtained involuntarily in violation of due process and his Fifth Amendment privilege against self-incrimination. Battle alleges that the district court erred in concluding that his inculpatory statements were made following a knowing and intelligent waiver, and that the statements were voluntary. Battle argues he was a "frightened boy," unaccustomed to police interrogation, who "cracked under pressure," and made the inculpatory statements.

The district court found evidence that ten days after the murder the police went to Battle's home when he was not there. The police had information that Elroy Preston may have been involved in the crime and wanted to question Battle about Preston's alibi that he had been drinking with Battle and Tracy Rowan the night of the crime. Battle agreed to accompany the officers to the police headquarters where they questioned him about Preston's alibi. At this time, Battle was not a suspect in the murder. However, during the course of the questioning, the officers observed that Battle was "unduly nervous and agitated." An officer in the interrogation room then noticed that the tread on Battle's shoe resembled the distinctive tread of a shoe print found at the scene of the murder. The district court found that the officer then halted the interview and advised Battle of his *Miranda* rights. Battle waived those rights, signed a written consent to be fingerprinted, and voluntarily surrendered his shoes to the officers. The district court found that approximately one hour after learning the positive matching of his fingerprints to the crime scene, Battle denied any involvement in the crime. Shortly thereafter, he agreed to make a tape-recorded statement. The officers gave Battle, who had an eighth-grade education and could read and write, a written *Miranda* warning form to sign. He read the warnings, initialed

the form after each warning, and signed it. At the beginning of the taped statement, he was again advised of his constitutional rights and again waived them. In the taped statement, he admitted he and Tracy Rowan broke into Birdie Johnson's apartment, but said Rowan committed the murder. After the officer said he did not believe Battle, the appellant agreed to tell the truth and confessed to the murder. Shortly thereafter he agreed to make a statement on a videotape. The officers once again advised him of his constitutional rights and again he waived them. After repeating his confession on the videotape, he was arrested. He also made inculpatory statements while in his jail cell.

The state trial court suppressed all statements Battle made before the audiotape statement and those made after the videotape confession, but admitted into evidence the audiotape and videotape. The district court found that the state trial court did not err in admitting the confessions on the audiotape and videotape because the officer's testimony, the execution of the waiver form, the transcripts of both tapes, and Battle's trial testimony "clearly show he was given multiple *Miranda* warnings and repeatedly waived them."

■ In determining whether a defendant confessed involuntarily, a reviewing court must examine the entire record to determine if the accused was coerced or his will was overborne. *United States v. Wilson,* 787 F.2d 375, 380–81 (8th Cir.), *cert. denied,* 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986). The court must consider the totality of circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. *Id.* The court must consider the confession in light of the age of the defendant, his level of education and intelligence, and the length of the questioning. *Schneckloth v. Bustamonte,* 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). However, we presume factual questions answered by the state trial court such as "whether the police in fact engaged in the intimidation tactics alleged by defendant" are correct. *Hill v. Lockhart,* 927 F.2d 340, 346 (8th Cir.) (quoting *Miller v. Fenton,* 474 U.S.

104, 112, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985)), *cert. denied,* —— U.S. ——, 112 S.Ct. 344, 116 L.Ed.2d 283 (1991). Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates an accused's due process rights. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986).

We reject Battle's contention that his confession was involuntary and violated his due process rights. The state trial court, and the district court in its own examination of the facts, found that Battle voluntarily confessed after being given repeated *Miranda* warnings. There is substantial evidence in the record to support these findings. Therefore, we affirm the district court's denial for federal habeas relief on this claim.

## IV.

▆▆▆▆ Battle next asserts that the district court erred in denying him habeas relief based on the state trial court's exclusion of a venireperson for cause on the ground that the venireperson stated in response to voir dire questions that he would automatically refuse to consider imposing the death penalty. Battle argues that the state trial court's exclusion of this venireperson violates *Witherspoon v. Illinois,* 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968). *Witherspoon* holds it is a violation of a defendant's right to trial by a cross-section of the community to exclude prospective jurors for cause merely because they express general objections to, or scruples against, imposing the death penalty. *Id.* "[A] juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980); *Wain-*

*wright v. Witt,* 469 U.S. 412, 420, 105 S.Ct. 844, 850, 83 L.Ed.2d 841 (1985). Although discharging a potential juror for his religious or moral beliefs violates a defendant's constitutional rights, a court may discharge prospective jurors when they make it clear they would automatically vote against the imposition of a sentence of death without regard to the evidence that might be presented at trial. *Davis v. Georgia,* 429 U.S. 122, 122–23, 97 S.Ct. 399, 399, 50 L.Ed.2d 339 (1976).

Battle raised this claim at the state level, and the Missouri Supreme Court found the trial court did not abuse "its broad discretion in concluding this prospective juror would automatically vote against capital punishment regardless of the evidence." *State v. Battle,* 661 S.W.2d at 491. The court interpreted *Witherspoon* to allow exclusion of venirepersons who refuse to "consider all of the penalties provided by law" and who are "irrevocably committed to vote against the death penalty regardless of the facts and circumstances that might be presented at trial." *Id.* (citing *Witherspoon,* 391 U.S. at 521–22, 88 S.Ct. at 1776–77). The district court also rejected Battle's *Witherspoon* argument after a detailed review of the venireperson's voir dire examination. The district court found the trial court dismissed the potential juror because he was clearly positive in his responses that he would not impose the death penalty in any situation.[9]

In reviewing the state trial court's determination, we recognize that "deference must be paid to the trial judge who sees and hears the juror." *Hatley v. Lockhart,* 990 F.2d 1070, 1072 (8th Cir.1993) (quoting *Wainwright* 469 U.S. at 426, 105 S.Ct. at 853). The venireperson stated several times in voir dire he would not consider recommending the death penalty regardless of the evidence that might be presented at trial. *See Hatley,* 990 F.2d at 1072 (excusing potential juror

---

9. The transcript from the voir dire examination includes the following:

THE COURT: Are you saying that there's no possible set of facts that could occur by which you could consider the death penalty?
FANNON: I don't think so. I don't know.
THE COURT: All right. Are you saying that you—I want to make sure I understand what you're saying. Are you saying that in no case

would you ever consider the death penalty, would you be able to consider it? Are you saying that or are you not saying that?
FANNON: Yeah. I don't think I would. I mean—
COURT: There's no case, there's no case in which you would ever consider imposing the death penalty. Is that what you're saying?
FANNON: Yeah.

who repeatedly expressed opposition to death penalty); *Bannister v. Armontrout,* 4 F.3d 1434, 1444 (8th Cir.1993) (excusing an ordained minister who said his conscience would never permit him to vote for the death penalty). The record amply supports the trial court's decision to remove this venireperson, and the district court did not err in denying Battle federal habeas relief on this claim.

## V.

Battle next argues that the district court erred in denying his request for an evidentiary hearing and refusing to grant his motion for funds to hire expert and investigative services.

Having upheld the district court's denial of Battle's claims for federal habeas relief, we conclude Battle has no right to an evidentiary hearing for issues relating to his ineffective assistance of counsel claims. *See Boyd v. Delo,* 999 F.2d 1286, 1289 (8th Cir.1993).

## VI.

Finally, Battle argues that this court should remand the case and assign the proceedings to a different district judge. In light of the foregoing affirmance, we need not consider this argument.

We affirm the district court's denial of Battle's petition for habeas corpus.